306 So.2d 724 (1975)
STATE of Louisiana
v.
Toliver JOHNSON.
No. 53170.
Supreme Court of Louisiana.
January 20, 1975.
*725 John T. Mulvehill, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Kornas, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
The defendant was convicted of armed robbery, LSA-R.S. 14:64, and sentenced to serve 25 years at hard labor. He appeals, relying upon 12 bills of exceptions.
Bills of Exceptions Nos. 1, 2, 3, 6 and 11.
Bills of Exceptions Nos. 1, 2, 3, 6 and 11, reserved during the hearing on the motion to suppress the identification, and during trial relative to that identification, have been consolidated for argument as they all relate to the same issue.
As part of the investigation, a police officer had the victim participate in a photographic lineup. The actual photographs used in this lineup were misplaced. However, the police report contained the Bureau of Identification number and name of each of the six individuals whose photographs were used. Thus, duplicate photographs of the six persons were obtained and were used during the motion to suppress the evidence and during trial. Defendant objected and reserved the above bills relative to this issue.
The defendant contends he was prejudiced by the use of the duplicates and argues that "the jury was deprived of evidence it needed to enable it to determine whether the photographs themselves were free from the taint of suggestibility."
We find no merit in this argument in view of the testimony by the victim, when presented with the six prints, that those photographs were the same ones shown him by the police officers.[1]
Consequently these bills lack merit.
*726 Bill of Exceptions Nos. 4 and 10.
Bill of Exceptions No. 4 was reserved when the trial court overruled defendant's motion to suppress the identification. Bill of Exceptions No. 10 was reserved during trial when the court allowed a photograph of the lineup to be admitted into evidence. The defendant has consolidated the two bills of exceptions for presentation of his arguments relative to the constitutionality of the procedures, a photographic lineup and a corporeal lineup, which led to his identification as the perpetrator of the armed robbery.
Initially, it is suggested that the trial court erred in failing to sustain the defendant's motion to suppress the identification, for it is argued that the identification was the result of impermissible suggestiveness in violation of the due process clause of the fourteenth amendment. The defendant presents two contentions in support of this argument.
First, the defendant claims that his position in the corporeal lineup made him unduly prominent. The defendant was number three in a five man lineup.
We do not find that this contention presents evidence of a suggestive lineup. A defendant's position in a lineup, be it first, last, or somewhere in between, is not in and of itself suggestive. Before such a contention can be found to be meritorious, facts demonstrating the suggestive nature of the lineup position must be presented. The defendant in the instant case presents no such facts. Indeed, contrary to the defendant's current complaint, the record reveals that the defendant himself chose his position and, in addition, was allowed to select from the four other lineup participants, the individuals to stand on either side of him.
The defendant's more serious contention in support of his claim that the identification procedures were impermissibly suggestive is his allegation that he was the only common participant in both the photographic and corporeal lineups, despite the fact that the victim had selected two individuals, the defendant and one other, from the photographic lineup.
We pretermit a decision on the constitutionality of such a procedure, as we do not find that the record supports the defendant's factual allegations. Our review of the record shows that the victim, while viewing the photographs one at a time, merely commented that one individual had facial structure similar to the robber. Significantly, when the victim later came to the photograph of the defendant, he made a tentative identification, and requested to either see the defendant in person or, at least, be shown a more recent photograph.
Thus, we find from the facts that the victim only identified one person, the defendant, from the photographic lineup, and we have held in State v. Holmes, La., 305 So.2d 409, decision rendered December 2, 1974, that it is not error to have the person identified in the photographic lineup participate also in a corporeal lineup, even though he may be the only common participant in the two procedures.
We turn now to the defendant's second major argument in regard to the constitutionality of the lineup. Quite simply, the defendant argues that as he was not represented by counsel at the lineup, he has been deprived of his sixth amendment right to the assistance of counsel.
It should be noted that the defendant went to trial in the summer of 1971. At that time, the most recent United States Supreme Court decision concerning application of the sixth amendment to lineup procedures was United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The holding in Wade was narrow, the Supreme Court concluding that an accused was indeed entitled to the representation of counsel at post-indictment lineups. What the Wade decision left unanswered was the question of whether the *727 sixth amendment was likewise applicable to pre-indictment lineups.
This question was negatively answered in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). In reaching its decision that the sixth amendment was not applicable to pre-indictment lineups, the Supreme Court heavily emphasized the fact that formal charges had not been lodged against Kirby at the time he participated in a lineup:
"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the `criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. See Powell v. Alabama, 287 U.S., [45] at 66-71, 53 S.Ct. [55] at 63 [, 77 L.Ed. 158]; Massiah v. United States, 377 U. S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246; Spano v. New York, 360 U.S. 315, 324, 79 S.Ct. 1202, 1207, 3 L.Ed.2d 1265 (Douglas, J., concurring).
"In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so." 406 U.S. at 689, 92 S.Ct. at 1882.
This Court has followed the Kirby decision and refused to find constitutional error in the absence of counsel at pre-indictment lineups. State v. Jefferson, 284 So. 2d 577 (La.1973); State v. Edgecombe, 275 So.2d 740 (La.1973).
It is undisputed that the lineup in this case was a pre-indictment one.[2] The defendant makes no argument that his case presents special circumstances amounting to a denial of counsel despite the Kirby decision. He does, in effect, request us to ignore Kirby. This we decline to do.
Accordingly, after thorough consideration, we find these bills of exceptions to be lacking in merit.
Bill of Exceptions No. 5.
Bill of Exceptions No. 5 was reserved to the denial of defendant's motion to suppress a .22 calibre pistol seized at the time of his arrest.
The facts surrounding this seizure are somewhat unusual. The defendant was formally placed under arrest, on a matter unrelated to the armed robbery charge forming the basis for this appeal, in the hallway outside of his apartment, while dressed only in his underwear. The defendant requested, and the police officers agreed, that he be allowed to put on his clothes. Thus, the defendant was handcuffed and he and the police officers entered the apartment.
For their own protection, the police officers made a cursory visual search of the apartment. Officer Taylor testified that his inspection of one bedroom, in which an individual was asleep, revealed a .45 calibre pistol, which upon closer examination was found to be dummy gun, and two knives sticking up on each side of the bed. In addition to this visual inspection, the officers kept the defendant under surveillance and were careful to search the areas coming within the defendant's control. Thus, Officer Williams searched the defendant's trousers before handing them to the defendant, and discovered a hypodermic needle in one of the pockets. The pistol itself was discovered in the defendant's *728 bedroom after the defendant, who had been released from the handcuffs, manifested what Officer Taylor considered a suspicious desire to sit on a particular spot on the bed. Before allowing the defendant to sit there, Officer Taylor raised the mattress and exposed the pistol.
The defendant argues that the search was an unconstitutional one, conducted without a search warrant, and not coming under the recognized exception, as expressed in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), that despite lack of a warrant, both the defendant and the area within his immediate control may be searched incident to a lawful arrest. Instead, the defendant argues, the search in the instant case is more akin to the unconstitutional, unreasonable search presented in Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), in which police officers, after having arrested Vale on the front steps of his residence, proceeded to enter his home and to conduct a thorough search for narcotics.
We do not agree with the defendant's assertion that Vale governs the search in the instant case. Unlike the situation presented in Vale, where the officers, without permission, entered the apartment for the sole purpose of conducting a search for contraband, the defendant in the instant case was the one who desired to enter the apartment, and the police officers accompanied the defendant not in order to conduct an illegal search, but in order to retain him in custody. An independent need existed to justify the officers' intrusion into the defendant's domicile, and once inside the apartment, the officers were justified in conducting limited searches for weapons.
We find support for this conclusion in the case of Giacalone v. Lucas, 445 F.2d 1238 (6th Cir. 1971), cert. den., 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972). Giacalone was formally placed under arrest at the front door of his residence at 6:00 a. m., while dressed only in shorty pajamas, a robe, and bedroom slippers, and a prothesis was attached to his leg. At the arresting officers' suggestion, Giacalone retired to his bedroom to put on street clothes. After Giacalone indicated that he desired to get clothes out of a chest of drawers, one of the officers proceeded to search the drawers for weapons. He discovered a small arsenal of weapons, including a blackjack which was subsequently used at trial as evidence against Giacalone.
The United States Court of Appeal for the Sixth Circuit rejected Giacalone's contention that the blackjack was seized as the result of an unreasonable general exploratory search and stated:
"The principle that law enforcement officials to protect their own safety may search the area within the immediate control of a person whom they have arrested has never been seriously challenged. See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1967); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). And in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the United States Supreme Court affirmed the continuing validity of this principle when it observed:
"`A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' 395 U.S. at 763, 89 S.Ct. at 2040.
"Applying these principles, the arrest of Appellant was lawful and the decision of the Appellant to enter his bedroom was reasonably close to the time and place of arrest and pursuant to a reasonable lawful purpose of changing out of one's bed clothes before leaving. The *729 discovery of the blackjack in the bedroom was the result of a search directed by the arresting officer of the area within the intended reach of the arrestee. Under such circumstances, the discovery of the blackjack was reasonably incident to the Appellant's arrest." 445 F.2d at 1247.
See also United States v. Titus, 445 F.2d 577 (2 Cir. 1971), cert. den., 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.2d 274 (1971), in which police officers were held to be justified in seizing evidence in plain view after accompanying a nude arrestee into his girlfriend's apartment in order to allow him to get dressed.
This bill has no merit.
Bill of Exceptions No. 7.
During redirect examination of Welton Washington, the victim of the armed robbery, the prosecutor questioned Mr. Washington as to why he was no longer working as an insurance collector for the Majestic Insurance Company. Defense counsel objected to this question, on the grounds of immateriality, and reserved Bill of Exceptions No. 7 when his objection was overruled. Thereafter, the witness responded to the question, stating:
"Because I left there three weeks after the holdup because I was born and raised back in that part of the section and I figured I was known by everyone there and also the books I saw I saw a lot of my school mates in it, sir."
The trial court was called upon to rule on the objection to a question the answer to which could have been relevant. Thus, we find no error in his overruling the objection. As it turned out, the question did, perhaps, elicit irrelevant information. But the substance of that answer, in our view, did not prejudice the defendant.
In his perfected bills of exceptions, and in brief before this Court in regard to Bill of Exceptions No. 7, the defendant presents additional arguments in support of his contention that the ruling by the trial court constituted reversible error.
The defendant concedes that LSA-R.S. 15:281[3] affords the trial court the discretion to allow the exploration of new areas on redirect examination, as was the situation here. It is argued, however, that R.S. 15:281, in authorizing redirect examination, "is confined to evidence of a factual nature," and does not permit, as it is alleged was involved in the instant case, evidence concerning the "emotional feelings of the witness." It is further argued (and this perhaps explains what the defendant means by "emotional feelings") that the question was meant to insinuate that the witness feared retribution (presumably, for testifying).
We find no merit in these arguments. There is no support for defendant's contention that redirect examination, as governed by R.S. 15:281, is limited to "factual" evidence. To the contrary, we interpret R.S. 15:281 as affording the trial court the discretion to allow the presentation of any competent evidence, including in appropriate instances, testimony by a witness as to his state of mind.
With respect to the defendant's contention that the prosecutor intended to elicit and did secure an answer insinuating fear of retribution, we do not concede that such was the import of the answer, and we note that the defendant did not urge this contention at trial. Nor, after receiving the answer did he protest thereto, either by way of a supplemental objection, a motion for a mistrial, or a request for an admonition from the trial judge.
This bill has no merit.
*730 Bill of Exceptions No. 8.
During trial, Officer Taylor was describing the circumstances surrounding the arrest of the defendant. The witness stated that before giving the accused his trousers, "Officer Williams started checking for weapons ... and he found a narcotics outfit in the pocket." The defendant at this point moved for a mistrial and reserved Bill of Exceptions No. 8 when the motion was denied.
The defendant argues that Officer Taylor's statement "was highly prejudicial evidence of another offense," requiring reversal of the conviction.
We do not agree. The remark was an unsolicited, voluntary statement by the witness, not imputable to the State, State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971), and in the sound opinion of the trial court, not sufficiently prejudicial to require a mistrial. The defendant was entitled to an admonition to the jury to cure any prejudice resulting from the remark,[4] but failed to request one after his motion for a mistrial was denied.
This bill lacks merit.
Bill of Exceptions No. 9.
This bill was reserved during trial when the state was allowed to introduce the .22 calibre pistol into evidence over defense objection. The defendant argues that its admission was error in that the testimony had not established a definite connection between the pistol and the defendant. Specifically, it is argued that several persons were in the apartment at the time the pistol was seized, and that the state failed to produce evidence demonstrating that the defendant, and not someone else, was responsible for the weapon being on the premises.
We find no merit in this argument. Through the testimony of the victim, who positively identified both the defendant and the pistol, the state presented evidence that the defendant possessed the weapon during the robbery. The police officers testified to the seizure of the pistol from under the mattress of the defendant's bed. Such testimony was sufficient to support the pistol's introduction into evidence. The final determination of connexity was for the jury. State v. Roquemore, 292 So.2d 204 (La.1974); State v. Howard, 283 So.2d 199 (La.1973).
Bill of Exceptions No. 12.
This bill was reserved when the trial court denied defendant's motion for a new trial.[5]
In brief to this Court, defendant argues that the verdict was contrary to the *731 law and evidence. For the reasons expressed in State v. Gilbert, 286 So.2d 345 (La.1973), such an allegation presents nothing for the Court's review.
Defendant also argues that several of his bills reserved during the proceedings show prejudicial error. Our review of the respective bills indicates this is not so.
This bill lacks merit.
Defendant's conviction and sentence are therefore affirmed.
BARHAM, J., dissents with reasons.
BARHAM, Justice (dissenting).
I am compelled to disagree with the majority's discussion and disposition of Bill of Exceptions No. 8. While I am aware of and fully concur in the general rule that unsolicited, non-responsive prejudicial and inadmissible testimony by a witness is not imputable to the State I believe that an exception to the general rule must be made when the witness who makes the unsolicited damaging remark is a police officer.
It is the State's duty to assure the criminal defendant of a fair trial; in the context of a criminal prosecution, the police may be seen as an integral part of the State prosecutorial team and actions on the part of the police which deprive the defendant of his due process right to a fair trial should be imputed to the State.
Recognizing such an exception to the general rule of non-imputation of non-responsive testimony is justified by an analogy to circumstances such as those which exist in Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842 (4th Cir. 1964) and numerous cases cited in the annotation at 34 A.L.R.3rd 16. In those cases, the rule of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), which proscribes prosecutorial suppression of evidence favorable to the accused, was held to be applicable in cases where the suppression was accomplished by the police, even when the trial prosecutor was not aware of the favorable evidence. The apparent rationale behind the extension is that the due process right to a fair trial must be afforded the defendant by all those who may be deemed members of the State prosecutorial team, including the police.
In the present case the unsolicited remark of the police officer that he found a narcotics outfit in the pocket of this defendant on trial for armed robbery was highly prejudicial inadmissible evidence. I believe that the trial court had a duty to grant the mistrial requested by the defendant; his failure to do so, in my opinion, constitutes reversible error.
I respectfully dissent.
NOTES
[1] As the very photographs used in the lineup were admittedly misplaced, we construe this witness' testimony to be that the six photographs shown him at the hearing on the motion to suppress the identification were duplicate prints of the photographs used in the earlier photographic lineup.
[2] The lineup was conducted on May 19, 1971. The bill of information charging defendant with armed robbery was subsequently filed on May 25, 1971.
[3] Redirect examination is governed by LSA-R.S. 15:281 which provides:

"The redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to recross on the new matter brought out on the redirect."
[4] "Art. 771. Admonition.

"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrevelant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
[5] The written motion for a new trial was based upon three specific allegations of trial error. The record reveals that counsel objected to each of the alleged errors at the time they occurred and, in two of the three instances, reserved bills of exceptions to the trial court's rulings. These two bills of exceptions were not perfected, however, and were not presented for our review. In addition, counsel has neither briefed nor argued before this Court the allegations contained in the written motion. Thus, they are deemed abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).