310 So.2d 573 (1975)
STATE of Louisiana
v.
Harry Ray FOSS a/k/a Duckie.
No. 55454.
Supreme Court of Louisiana.
March 31, 1975.
Rehearing Denied April 25, 1975.
*574 Manuel A. Fernandez, Indigent Defender Bd., Parish of St. Bernard, Chalmette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., L. H. Perez, Jr., Dist. Atty., Gilbert V. Andry, III, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Defendant Foss appeals from his conviction of distribution of marijuana and his sentence of six years at hard labor and a fine of $50.00, in default of which he is condemned to serve an additional thirty days. Defendant presents ten bills of exceptions for our consideration; we find reversible error in Bill of Exceptions No. 6, and on that basis we hereby reverse the conviction and sentence and remand the case for a new trial. We pretermit consideration of the other bills of exceptions.
During the testimony of Officer Riley, a State's witness, it was revealed that he met the defendant at the home of Stephen Jones, a man from whom Officer Riley was purchasing heroin. Officer Riley testified on cross-examination that about ten minutes after he had been introduced to the defendant, Foss offered to sell him some cocaine. In an attempt to establish how this offer was made in such a short period of time after their initial introduction, defense counsel attempted to determine how long, out of the ten minutes which elapsed between the introduction and the offer to sell, Officer Riley had actually conversed with the defendant. The colloquy which began with defense counsel's question to Officer Riley follows:
"Q * * * How long out of the ten minutes did you talk to him?
"A You mean the first ten minutes I was there?
"Q Yes.
"A It was everybody talking at one time. Everybody was laughing and joking and talking about there was dope all over the place and the police came up to the door asking about a burglary, and they had dope on the table when I got there, and they were saying how stupid the police was. They didn't see the dope, and Mr. Foss said one of the deputies said that he was the king pin, and I believe he was talking about Captain Charrier said that Mr. Foss was the king pin of the burglary organization.
"Q Mr. Foss said what?
"A He was bragging on how Captain Charrier referred to him as the king pin of the burglary organization *575 or whatever it was that they were investigating at the trailer. I believe it was Mr. Charrier.
"Q You are certain that conversation took place?
"A Yes.
"Q All in ten minutes.
"A Oh, yes, sir.
"Q All the things you said?
"A Yes, sir.
"* * *."
At this juncture defendant moved for a mistrial, arguing that the witness' answer was not responsive to the questions and that the witness' statements alluding to criminal conduct not the subject of the trial in progress were made in an attempt to prejudice the jury against him. The trial court ordered the jury removed from the courtroom, had the court reporter read Officer Riley's answers, and instructed defense counsel to make his motion. Defense counsel reiterated the motion and the grounds earlier argued. Prior to the court's ruling, both the district attorney and defense counsel argued the motion, and the court weighed the merits of the motion as set forth below:
"[Prosecutor]:
"Your Honor, I would like to comment that the testimony, if counsel wanted to stop it shortly after it started, he could have. He did not. He said, `Mr. Foss said what,' and that is when Mr. Riley
"THE COURT:
"Mr. Livaudais, you know that inflammatory remarks had occurred before he said, `Mr. Foss said what.' You want me to reread it to you.
"[Prosecutor]:
"I know it occurred before. I feel it was responsive, and I feel if defense counsel wanted to cut it off, he could have rather than saying the defendant, Mr. Foss, said what, and I think that is indicative of the fact that the answer was responsive in this witness's [sic] mind to the question, and I do feel that he could have been cutoff earlier if it had actually been desired, and I do not think that this type of answer is unresponsive to the question when you start trying to cross-examine a witness vigorously and you want him to say everything that happened. I think it is encumbent on him to tell the truth, the whole truth and nothing but the truth, and I think that is what he was doing in response to a vigorous cross-examination.
"THE COURT:
"The Court doesn't feel as such, and the Court cautions Mr. Riley to watch his answers and not supply information such as this again. If you do so, I will declare a mistrial. If I thought you had done it on purpose, I would so declare a mistrial at this time. I feel there is a possibility in this instance that these type of remarks could prejudice this defendant. I am going to deny the motion for a mistrial, and I will let you reserve your bill in a minute. In denying the motion for a mistrial, I will allow you either to let the record go as it is, or for me to give an instruction to the jury to disregard his statement, as you so desire.
"[Defense Counsel]:
"Your Honor, I, of course, want the instructions if it is going to go. My only point is they have heard it and how can you remove from their minds the fact they have heard it.
"THE COURT:
"I cannot, Mr. Fernandez.
[Defense Counsel]:
"I know that, your Honor. That is why I say it is prejudicial.
*576 "THE COURT:
"I will let the Supreme Court decide whether the conduct of this trial is correct. I have great doubt in my mind of my own ruling, but I will let it go.
"[Defense Counsel]:
"To which ruling, your Honor, defense counsel reserves a Bill of Exception, making a part thereof the question to Mr. Riley, `How long did you talk to Mr. Foss,' and his entire response thereto, up to the time of the motion for the mistrial, including the motion for mistrial; the argument of counsel; the ruling of the Court and the entire record in this proceeding.
"THE COURT:
"Let the bill be reserved. Call the jury back in. You want an instruction or not?
"[Defense Counsel]:
"Yes, sir, I certainly do, the best instruction I can get.
"* * *."
Code of Criminal Procedure Article 770 requires the trial court to order a mistrial upon defense motion when there is reference by the judge, the prosecutor, or a court official to "* * * [a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. * * *" In the present case, however, the officer's testimony concerning defendant's status as the "king pin" of a burglary organization, while constituting an improper reference to another crime, does not under our prior jurisprudence, come within Article 770's mandatory mistrial provisions. We have held that a police officer is not a court official and therefore his conduct in tainting a trial with highly prejudicial and inadmissible evidence is not controlled by La.C. Cr.P. art. 770. The provisions of the Code of Criminal Procedure which we recognize as applicable to these cases are Articles 771 and 775 which provide, in pertinent part:
"Art. 771. Admonition
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"* * *
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisified that an admonition is not sufficient to assure the defendant a fair trial.
"Art. 775. Mistrial; grounds for
"* * *

"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771. (Emphasis here and elsewhere supplied.)
"* * *."
Evidence of other criminal activity which is not the subject of the prosecution in progress has been acknowledged to be so highly prejudicial that, even in cases where such evidence is deemed admissible to meet a statutorily approved purpose, this Court requires the prosecution to weigh the probative value of the evidence in light of its possible prejudicial effect. We require *577 the exclusion of the evidence if the prejudicial effect outweighs the probative value. See State v. Pettle, 286 So.2d 625 (La.1973). See also State v. Moore, 278 So.2d 781 (La.1973). In the instant case we recognize that regardless of whether inadmissible "other crimes" evidence is elicited by the prosecution or volunteered by a witness by way of an unresponsive answer, such evidence has a dangerous "* * * tendency to influence the triers of fact improperly as to the present guilt of the accused." State v. Prieur, 277 So. 2d 126 (La.1973). When gratuitous information supplied by a witness effectively jeopardizes the defendant's due process right to a fair trial, a trial court is required to follow the dictates of the Code of Criminal Procedure and grant a mistrial.
In the present case the record reflects that the trial judge was acutely aware of the prejudice which resulted from the witness' imprudent and unsolicited remark. He expressed grave doubt about the propriety of his ruling and acknowledged his inability to totally cure the prejudice by jury admonition. We find the trial court's doubts about the correctness of its ruling well-founded; the circumstances required that a mistrial be granted in order to preserve the defendant's right to a fair trial. The trial court's action in refusing to order a mistrial constitutes a failure to follow the mandates of La.C.Cr.P. arts. 771 and 775 and requires a reversal of the defendant's conviction and sentence.
Since we reverse the defendant's conviction and sentence on the grounds of Officer Riley's prejudicial testimony, it is unnecessary for us to consider whether Riley's status as a policeman should alter the general rule that unresponsive, prejudicial and inadmissible testimony by a witness is not imputable to the State. See State v. Johnson, 306 So.2d 724 (La.1975) (dissenting opinion). We are constrained to note, however, that damaging inadmissible and non-responsive testimony offered by police officer witnesses or by other members of the law enforcement or prosecutorial team has been the subject of large and ever-increasing numbers of defense complaints. It is unlikely that the courts will long tolerate this conduct of experienced witnesses trained by the State who are knowledgeable about courtroom decorum and the basic rules of evidence when such conduct jeopardizes the criminal defendant's right to a fair trial. We grow increasingly suspicious as we read record after record in which experienced police officers, educated and trained to testify, seemingly explode with nonresponsive, inadmissible remarks of great prejudice when asked innocent questions by the State and the defense. Prosecutors throughout the State would do well to instruct all State's witnesses to avoid unresponsive answers to State or defense questions and to conscientiously confine their answers to information which the trial attorneys seek through their questioning. A failure on the part of the State to assume such a role could well result in the needless expenditure of time and money in re-trying cases in which a witness (especially a law enforcement witness) by his careless disregard of the defendant's rights, has necessitated a reversal of a conviction.
Although we do not dispose of the defendant's claims of reversible error with regard to the other bills of exceptions presented for our review, we note that upon retrial of this defendant the conviction of the alleged co-perpetrator of this crime, based upon his guilty plea, will in all probability be final. In that event, the circumstances affecting the alleged co-perpetrator's standing to claim his Fifth Amendment privilege against self-incrimination may well have changed since defendant's first trial. See People v. Smith, 34 Mich.App. 205, 191 N.W.2d 392 (1971), and State v. Tyson, 43 N.J. 411, 204 A.2d 864 (1964). However, we do not determine the issue at this time.
For the reasons assigned, the defendant's conviction and sentence are reversed and the case is remanded for a new trial.
*578 SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent and assign reasons.
DIXON and CALOGERO, JJ., disagree from the opinion as written, but nevertheless concur in the result, believing reversible error occurred when defendant was wrongfully denied the right to examine a witness who was not entitled to take the 5th amendment.
MARCUS, Justice (dissenting).
I dissent from the reversal of this conviction and sentence. Officer Riley was being cross-examined by defense counsel. The answer was responsive to the question asked. It encompassed that which transpired during the first ten minutes he was there. After the reference had been made to Foss' reputation as the king pin of the burglary organization, defense counsel asked the witness to repeat what Foss had said. This involved a repetition of the reference to Foss as the king pin of the burglary organization. Thereafter, defendant moved for a mistrial. In my view, prior to this request for repetition by defense counsel, an admonition would have been sufficient to insure defendant a fair trial. No mistrial was necessary at this point. Any prejudicial effect which may have resulted requiring a mistrial was caused by defense counsel's request for repetition of the objectionable reference. Accordingly, I respectfully dissent.
SUMMERS, Justice (dissenting).
Reference to the entire cross-examination between defense counsel and Officer Riley leaves no doubt that Officer Riley's answers were not only responsive to defense counsel's questions, but defense counsel actually insisted upon Officer Riley's answers. The full colloquy, not included in the Court's opinion, is quoted as follows:
"Q. How did it happen on that day? Did he walk in and say, `Hello. I am Harry Foss, how about some drugs?'
A. No, sir. I was talking to Mr. Jones. I was making a heroin purchase off of Mr. Jones, and Mr. Foss entered into the conversation and stated he could get cocaine.
Q. Unsolicited?
A. Yes, sir.
Q. You didn't talk to Mr. Foss prior to him offering to get you this dope?
A. Yes, sir, I did talk to him.
Q. For about ten minutes at the most?
A. Yes, sir.
Q. You were there for ten minutes. How long out of the ten minutes did you talk to him?
A. You mean the first ten minutes I was there?
Q. Yes.
A. It was everybody talking at one time. Everybody was laughing and joking and talking about there was dope all over the place and the police came up to the door asking about a burglary, and they had dope on the table when I got there, and they were saying how stupid the police was. They didn't see the dope, and Mr. Foss said one of the deputies said that he was the king pin, and I believe he was talking about Captain Charrier said that Mr. Foss was the king pin of the burglary organization.
Q. Mr. Foss said what?
A. He was bragging on how Captain Charrier referred to him as the king pin of the burglary organization, or whatever it was that they were investigating at the trailer. I believe it was Mr. Charrier.

*579 Q. You are certain that conversation took place?
A. Yes.
Q. All in ten minutes?
A. Oh, yes, sir.
Q. All the things you said?
A. Yes, sir.
MR. FERNANDEZ:
Your Honor, I move for a mistrial. The answer is not responsive to the questions, and this is simply an attempt to prejudice this defendant in other conduct that he is not on trial for and has not been charged. It is just to prejudice this jury against this man.
THE COURT:
Take the jury out, Mr. Landry."
In addition, the trial judge, unnecessarily in my opinion, admonished the jury in the strongest possible terms, which I quote as follows:
"THE COURT:
Let the record reflect that the defendant is present in Court with his Counsel.
Now, gentlemen of the jury, right before I sent you out, defense counsel made a motion for a mistrial because of a certain statement made by the witness in regards to a conversation he reportedly had with Defendant Foss. I am going to instruct you at this time that you are to disregard the answer given to that question by this witness in toto. I will allow Mr. Fernandez to start again at that point and ask the witness the question again. You are to totally disregard the entire answer of that question. You are totally to disregard any reference made whatsoever to anything about this defendant being a `king pin', et cetera. We had no business in this courtroom with that response from this witness and I have cautioned him in regards to that type of response again.
Mr. Fernandez, you may proceed."
It is no objection that the relevant evidence bearing on the question at issue also tends to show the commission of other crimes by the accused. State v. John Hamilton, Jr., decided January 20, 1975, 307 So.2d 329; State v. Kinchen, 290 So.2d 860 (La.1974).
No violation of any statutory or constitutional right occurred, even under the Court's theory of the case, and the evidence of defendant's guilt is otherwise so overwhelming that the outcome of this conviction could not have been affected by this testimony. In fact, Harold S. Tedder, with whom he was jointly charged, pled guilty minutes before the trial began. La. Code Crim.Proc. art. 921.
I would affirm the conviction.
SANDERS, Chief Justice (dissenting).
As I view the record, defense counsel, himself, elicited the testimony relating to the other crime during his cross-examination of a prosecution witness. He then requested that the witness repeat the testimony.
The basic error in the majority opinion is charging this testimony against the State in order to upset the conviction. Clearly, the State had nothing to do with the presentation of the testimony or its repetition.
The rule is well established in this State and elsewhere that testimony for which the State is not responsible provides no ground for upsetting a criminal conviction. See, e.g., State v. Johnson, 261 La. 620, 260 So. 2d 645 (1972); State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971); State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966).
Since the defendant elicited the testimony, it appears that an admonition to the jury was unnecessary. See State v. Johnson, supra. In any event, the trial judge's *580 admonition to disregard the testimony was adequate to insure a fair trial. See LSA-C.Cr.P. Art. 771.
For the reasons assigned, I respectfully dissent.