316 So.2d 727 (1975)
STATE of Louisiana
v.
Paul E. LEPKOWSKI.
No. 56052.
Supreme Court of Louisiana.
July 25, 1975.
*728 Wendell E. Tanner, Tanner & Lussen, Slidell, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Julian J. Rodrigue, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant, Paul E. Lepkowski, was arrested February 18, 1974 and found guilty by a jury of attempted armed robbery on October 14, 1974; he was subsequently sentenced to five years at hard labor.
Before us defendant urges two errors to which he objected at the trial. However, defendant neither perfected bills of exceptions nor assignments of errors. Consequently, there is nothing before us for review except errors discoverable by inspection of the pleadings and proceedings. State v. Shillow, 310 So.2d 103 (1975). C.Cr.P. 884 and 920.
Nevertheless, we have examined the errors assigned by defendant, and find them without merit.
The first assigned error occurred during the State's examination of a deputy who had investigated the crime:
"Q: As a result of the information which you received from Mrs. Reimoneng, did she tell you what kind of car [defendant] was driving?
"A: Yes, sir. She told me it was a Volkswagen.
"Q: As a result of the information which you received from her, what did you do?
"A: Well, I received my information from her: The subject was suppose (sic) to be a newspaper salesman. I went to the local two newspaper agencies in town, the Times and the Sentry, inquired if they had anybody selling subscriptions that matched this physical description. At the Sentry, Daily Sentry News I learned that they did have a subject that met the general description and did drive a Volkswagen.
"Q: Did you know anything else that led you to Mr. Lepkowski?
"A: Yes, sir. I learned at the Sentry that he had a previous conviction.
"Defense Counsel: Objection. I ask the jury be removed.
"The Court: Retire the jury."
A direct or indirect reference to another crime committed by defendant, as to which evidence would not be admissible, would require a mistrial upon motion of defendant. C.Cr.P. 770. A question by a prosecutor *729 to a police officer designed to place before a jury inadmissible evidence of another crime would clearly be error. The trial judge did not find, however, and defendant does not argue, that the evidence of the other conviction was obtained by design of the prosecutor.
After argument and recess to examine the applicable statutes, the trial judge concluded the remark was not covered by C.Cr.P. 770: the witness was not a "court official;" State v. Howard, 283 So.2d 197 (La.1973); there was no other reference or explanation of the "other conviction," either as to time, place or nature (until the defendant, himself, took the stand). The judge correctly concluded that the matter was covered by C.Cr.P. 771, and admonished the jury to disregard the remark.
The second assigned error concerns a statement made by the district attorney during the closing arguments. The district attorney stated:
". . . If her physical condition of hysteria, crying, excitement wasn't true, then all of you are reasonable men, you know that it takes something to trigger this in a human being. You heard the testimony about the condition of the little boy, the innocent little boy who was with his mother. It takes something to trigger this in a human being, even that small. And what did trigger it? If what Paul Lepkowski says is true, the lady dreamt up the story. She made it up. She fabricated it. For what purpose? To testify against a man she had never seen before in her life? To try to send a man to the penitentiary she didn't know? Do you believe that a human being of this lady's caliber would do something like that? For what purpose? For what reason?
"He has given you nothing to sink your teeth into. Why would somebody come up with a story of that unless it was true? You think we don't check into the background of stories like this?
"Mr. Tanner: I am going to object. This is not a rebuttal.
"Mr. Rodrigue: I am allowed to argue, Your Honor.
"The Court: There is no restriction on rebuttal.
"Mr. Rodrigue: You think we would have prosecuted had we found anything in the investigation to reveal that it had not happened? Just think, gentlemen, of the witnesses from both sides and what they have to gain and what they have to lose by what she said on this witness stand."
The objection made at the trial was that the district attorney was exceeding the scope of rebuttal. In brief the defendant abandons this objection and argues instead that the argument was improper because the district attorney violated the rule, enunciated in State v. Cascio, 219 La. 819, 54 So.2d 95 (1951), that the district attorney is not allowed to argue his belief in the guilt of the defendant, based on matters not before the jury. In the case before us, however, the district attorney was merely arguing the probabilities of truthfulness of a witness, and the possible fabrication of the complaint by the use of rhetorical questions. In this context the references to checking the background and to the investigation were not improper.
Accordingly, the sentence and conviction are affirmed.
TATE, J., concurs and assigns reasons.
BARHAM, J., dissents and assigns reasons.
TATE, Justice (concurring).
It is to be emphasized that the majority has not held that the State's closing argument *730 may properly argue that the prosecution would not have been instituted unless the State, after investigation, had found just cause to prosecute the accused. Under well-settled authority, this type of argument, if not corrected, may be subject for reversal as tending to destroy the presumption of innocence to which all those are entitled who are accused of crime before our courtsas improperly throwing the prestige of the State and its officials onto the scales of justice in order to influence the jury towards believing that the defendant must be guilty or else the State would not have accused him.
The majority did not hold the present argument to be proper. It simply held that, on the basis of the limited objection to it as exceeding the scope of rebuttal, the objection on that ground was properly overruled.
BARHAM, Justice (dissenting).
I must dissent from the majority opinion in this case because I disagree strongly with its disposition of both of the errors assigned by defendant.
Defendant's first assignment of error complains that the trial court should have granted him a mistrial when one of the State's witnesses, a police officer, in the presence of the jury and in response to a question by the prosecutor, mentioned a prior conviction of defendant. The subject matter of the comment[1] in question is clearly within the scope of La.C.Cr.P. art. 770(2). That provision reads as follows:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
"* * *
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
"* * *
Moreover, any comment by a witness for the State which is directly responsive to a question propounded by the prosecutor should be imputed to the State and treated as if it were made by the district attorney for the purposes of La.C.Cr.P. art. 770.[2] The prosecutor cannot subvert the legislative intent embodied in Article 770 and deny defendant a fair trial by an impartial jury merely by placing in the mouth of his witness words which, if spoken by the prosecutor himself, would require automatic mistrial.
In the present case, the prosecutor asked a broad, open-ended question that prompted the impermissible reference to a prior conviction.[3] Even assuming that the exchange was inadvertant, the prosecutor should have realized that his inquiry invited the very response given by the witness. Just as even an innocent remark within the scope of La.C.Cr.P. art. 770 made by the prosecutor himself will necessitate a mistrial, so too will such a remark directly elicited by the prosecutor from his witness.
Moreover, in this case, the State witness who mentioned the prior conviction was a police officer. I feel that even unresponsive, unsolicited comments by police officers, *731 whether they are being questioned by the State or the defense should be imputed to the State. State v. Foss, 310 So.2d 573 (La.1975); State v. Johnson, 306 So.2d 724 (La.1975) (dissenting opinion). A fortiori, when the response has been solicited by the State we must treat the remark as though it had been made by the prosecutor himself.
"It is the State's duty to assure the criminal defendant of a fair trial; in the context of a criminal prosecution, the police may be seen as an integral part of the State prosecutorial team and actions on the part of the police which deprive the defendant of his due process right to a fair trial should be imputed to the State." State v. Johnson, supra, 306 So. 2d at 731.
As this writer stated in State v. Foss, supra:
"We are constrained to note, however, that damaging inadmissible and non-responsive testimony offered by police officer witnesses or by other members of the law enforcement or prosecutorial team has been the subject of large and ever-increasing numbers of defense complaints. It is unlikely that the courts will long tolerate this conduct of experienced witnesses trained by the State who are knowledgeable about courtroom decorum and the basic rules of evidence when such conduct jeopardizes the criminal defendant's right to a fair trial. We grow increasingly suspicious as we read record after record in which experienced police officers, educated and trained to testify, seemingly explode with nonresponsive, inadmissible remarks of great prejudice when asked innocent questions by the State and the defense. Prosecutors throughout the State would do well to instruct all State's witnesses to avoid unresponsive answers to State or defense questions and to conscientiously confine their answers to information which the trial attorneys seek through their questioning. A failure on the part of the State to assume such a role could well result in the needless expenditure of time and money in re-trying cases in which a witness (especially a law enforcement witness) by his careless disregard of the defendant's rights, has necessitated a reversal of a conviction. 310 So.2d at 577.
Defendant's second assignment of error is equally meritorious. Less than a year ago, this Court in State v. Kaufman, 304 So.2d 300 (La.1975), noted that the type of argument used in this case, "* * * has been held to be erroneous and prejudicial in Louisiana since at least State v. Accardo, 129 La. 666, 56 So. 631 (1911). * * *" The prosecutor may not express his personal opinion as to the guilt or innocence of the defendant. State v. Curry, 262 La. 280, 263 So.2d 36 (1972); State v. Landry, 262 La. 32, 262 So.2d 360 (1972); State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964). Such an expression exceeds the permissible scope of argument provided for by La.C.Cr.P. art. 774[4] and deprives defendant of a fair and impartial trial by introducing irrelevant matter or facts not legally produced in evidence and adds the prosecutor's personal influence to the weight of the evidence adduced against defendant. 5 Wharton's Criminal Law and Procedure, § 2083 (Anderson ed., 1967), p. 245.
It is inconceivable to me how the majority can find that the argument of the prosecutor in the present case did not fall within the prohibition enunciated in the cases discussed above. The following excerpt from the transcript reveals argument *732 more objectionable than many comments which have been held to require a mistrial:[5]
"[Prosecutor]:
"* * * If what Paul Lepkowski says is true, the lady dreamt up the story. She made it up. She fabricated it. For what purpose? To testify against a man she had never seen before in her life? To try to send a man to the penitentiary she didn't know? Do you believe that a human being of this lady's caliber would do something like that? For what purpose? For what reason?
"He has given you nothing to sink your teeth into. Why should somebody come up with a story of that unless it was true? You think we don't check into the background of stories like this?
"[Defense Counsel]:
"I am going to object. This is not rebuttal.
"[Prosecutor]:
"I am allowed to argue, Your Honor.
"The Court:
"There is no restriction on rebuttal.
"[Prosecutor]:

"You think we would have prosecuted had we found anything in the investigation to reveal that it had not happened? Just think, gentlemen, of the witnesses from both sides and what they have to gain and what they have to lose by what she said on this witness stand." (Emphasis supplied.)
What was the district attorney doing if not asserting that he and his staff would not have prosecuted were they not convinced of defendant's guilt? Such an assertion contravenes an express statutory provision and could have no effect but to prejudice defendant in the eyes of the jury. I cannot distinguish this case in favor of the State from State v. Kaufman, supra. If the cases can be distinguished, the difference favors the defendant's assertion of reversible error.
I respectfully dissent.
NOTES
[1] "A: Yes, sir. I learned at the Sentry that he had a previous conviction."
[2] Although this Court has never explicitly held that an answer elicited by the prosecutor is imputed to the State, such a rule is implicit in numerous statements throughout the jurisprudence. See, e.g., State v. Callihan, 257 La. 298, 242 So.2d 521 (1970): "* * * Unsolicited, spontaneous answers, statements, and language of a witness Not necessarily responsive to the question are not usually grounds for a mistrial. * * *" (Emphasis supplied.) See also, State v. Smith, 285 So.2d 240 (La.1973); State v. Newman, 283 So.2d 756 (La.1973).
[3] "Q.: Did you know anything else that led you to Mr. Lepkowski?"

"A.: Yes, Sir. I learned at the Sentry that he had a previous conviction."
[4] "Art. 774. Argument; scope.

"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
"The argument shall not appeal to prejudice.
"The state's rebuttal shall be confined to answering the argument of the defendant."
[5] E.g., in State v. Kaufman, supra, this Court felt compelled to reverse because the trial court refused to grant a mistrial on account of the following comment by the prosecutor:

"* * * Gentlemen, my argument, when I speak in a personal way, my argument is based on the evidence, and believe me, that's right, I personally feel from the evidence that I have a case; otherwise, I wouldn't be here, because it's within my power to be here or not be here.' (objection) Tr. 408-410."