332 So.2d 806 (1976)
STATE of Louisiana
v.
Timothy RUDOLPH.
No. 57327.
Supreme Court of Louisiana.
May 17, 1976.
*808 Arthur A. Lemann, III, Supervising Atty., New Orleans, Joseph A. Mengacci, Student Practitioner, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Ralph Capitelli, Louise S. Korns, Asst. Dist. Attys., for plaintiff-appellee.
CALOGERO, Justice.
On January 28, 1973, Lindell Bickham, a cashier at a Lil General Store, 1738 Whitney Avenue, New Orleans, Louisiana, was robbed of sixty dollars ($60.00) by a man with a rifle. Defendant Timothy Rudolph was arrested in connection with this armed robbery in February 1973, after the victim picked out defendant's picture from a display of photographs and identified him as the robber. Following this arrest, defendant was released without being formally charged. Later defendant was arrested in connection with another offense. On April 16, 1973, a corporeal lineup was conducted at which time defendant was again identified as the perpetrator of the January 28, 1973 robbery of the Lil General Store. Ten days later the district attorney filed a bill of information against defendant charging him with armed robbery in violation of La.R.S. 14:64. On November 19, 1974, after trial by jury, defendant was found guilty as charged and was subsequently sentenced to serve sixty years imprisonment at hard labor.
Relying on six assignments of error, defendant now appeals from his conviction and sentence.

ASSIGNMENTS OF ERROR NOS. 1 and 3.
These assignments of error relate to the trial court's denial of defendant's motions for a change of venue and, alternatively, for a thirty day continuance, which were urged as a means of lessening the impact of publicity associating defendant with the Jo Ellen Smith case.[1]
In an original motion for change of venue, defendant argued that because of extensive media coverage of defendant's involvement in the Jo Ellen Smith murder case, defendant could not receive a fair and impartial trial in Orleans Parish. This motion was heard on October 30, 1974, at which time defendant introduced a series of newspaper articles about that murder case in which defendant was mentioned by name. In denying the motion, the trial judge concluded: "I think that we could find twelve jurors that wouldn't be biased in any way against the defendant ..." On the morning of trial, the motion for a change of venue was reurged, together with an alternative motion for a continuance, based on the then current issue of New Orleans Magazine featuring "[a]n account of the murder of Jo Ellen Smith, and the subsequent trial of Stephen Berry." This motion was also denied.
Article 622 of the Louisiana Code of Criminal Procedure places the burden on the defendant to establish that he cannot obtain a fair trial in the parish where the prosecution is pending. State v. Berry, 329 So.2d 728 (La.1976), (decided March 29, 1976); State v. Stewart, 325 So.2d 819 (La.1976); State v. Bell, 315 So.2d 307 *809 (La.1975). In establishing this proof, the defendant must show more than mere knowledge by the public of the facts surrounding the offense. There must be proof of such prejudice in the public mind that a fair and impartial trial cannot be obtained in the parish in question. State v. Berry, supra.; State v. Stewart, supra.; State v. Flood, 301 So.2d 637 (La.1974); State v. Leichman, 286 So.2d 649 (La.1973).
However, under the test set forth in article 622 of the Code of Criminal Procedure, the fact that a jury can be selected, i.e., that the requisite number of jurors are not subject to a valid challenge for cause, does not mandate the conclusion that a motion for change of venue was properly denied by the trial court. As stated in Official Revision Comment (b) to Louisiana Code of Criminal Procedure article 622, and noted with approval in both State v. Berry, supra. and State v. Bell, supra.:
"A change of venue ought to be available even though, individually, each juror is not susceptible to a valid challenge for cause, if the defendant can show that overriding all of these things and superimposed upon all of them he still cannot get a fair trial. The change of venue concept should operate where the state of the public mind against the defendant is such that jurors will not completely answer honestly upon their voir dire, or witnesses will be so affected by the public atmosphere that they will not testify freely and frankly."
While the trial judge in the instant case did state, in denying the original motion for a change of venue, that he felt a jury could be selected, his reasons set forth in his per curiam opinion indicate that he did consider other factors.[2] In that opinion, the trial judge stated in part as follows:
"Although there was extensive publicity of the rape-murder it focused on Stephen Berry, the major suspect in the case. At the time the first motion for a change of venue was made the publicity surrounding the rape-murder had substantially subsided. The article in the `New Orleans Magazine' may have reminded the public of the rape-murder (although it should be noted that defendant did not prove the circulation of the magazine), however, that article also focused on Stephen Berry. Subsequently Berry was found guilty and sentenced to life imprisonment for that offense which fact also received wide publicity. There has been no publicity concerning this armed robbery. Defendant's evidence consisted only of the newspaper clippings and the magazine article concerning a different offense than the armed robbery for which the defendant was on trial. There has been no proof of prejudice to the defendant. The Court believes that a metropolitan area like New Orleans may be the place defendant would best receive a fair trial."
While we recognize the inherent difficulty of presenting direct evidence of prejudice against a defendant and acknowledge that positive proof of such prejudice is not generally available or indeed always required, we nonetheless conclude that in the instant case there was not a sufficient indication of the impact of the news media coverage on the public mind to sustain defendant's burden of proof.
The granting or denial of a motion for change of venue rests within the sound discretion of the trial judge and his ruling will not be disturbed unless the evidence affirmatively establishes that the ruling was erroneous and an abuse of judicial discretion. State v. Berry, supra; State v. Stewart, supra; State v. Richmond, 284 So.2d 317 (La.1973). Under the evidence presented to support the defendant's motion for change of venue, we conclude that the trial judge did not abuse that discretion.
*810 With respect to defendant's alternative motion for a thirty (30) day continuance, article 712 of the Louisiana Code of Criminal Procedure provides that "[a] motion for a continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor." For the same reasons discussed above in relation to the motion for change of venue, we conclude that the trial judge did not act unreasonably and did not abuse his discretion in refusing to grant the continuance.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2.
By this assignment of error, defendant argues that the trial court erred when it refused to grant defendant's motion to suppress Lindell Buckham's identification. He contends that the identification was based on illegal photographic and corporeal lineups and that there was no independent basis for the in-court identification.
The photographic lineup was challenged on the grounds that the state was unable to produce the actual photographs displayed to Lindell Bickham, the victim of the robbery. At the hearing on the motion to suppress the identification, Officer Adams, who had conducted the photographic display, testified tha the original photographs shown to Bickham had been lost. However, the officer had noted the Bureau of Investigation numbers from the front of each photograph in his supplemental report, These B of I numbers enabled him to obtain additional photographs which, if not identical to the originals, definitely portrayed the same individuals who were pictured in the originals.
In State v. Johnson, 306 So.2d 724 (La. 1975), this Court rejected the defendant's argument that where the original photographs displayed to a witness are replaced by duplicates, "the jury was deprived of evidence it needed to determine whether the photographs themselves were free from the taint of suggestibility." Defendant attempts to distinguish State v. Johnson, supra., arguing that while the witness in that case testified that the duplicates were the same as the original prints exhibited to him, in the instant case Bickham was unable to state positively that the prints were identical to the originals. He did, however, testify that in all probability they were the same.
Defendant argues that since the state could not verify that all the prints produced at the hearing were identical to the photographs shown to the witness, the photographic display should have been presumed by the trial court to have been impermissibly suggestive. However, we are not here required to determine whether this argument is meritorious. The photographs in question were not introduced at trial. Thus for the reasons hereinafter discussed we conclude that even if the photographic display was impermissibly suggestive defendant was not prejudiced thereby.
It is well-established that even if a pretrial identification of an accused was the product of impermissible suggestion, the in-court identification is nevertheless admissible if it has an independent basis. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); State v. Bland, 310 So.2d 622 (La.1975); State v. Newman, 283 So.2d 756 (La.1973). In the instant case Lindell Bickham, the identifying witness, testified that he had observed defendant hanging around the Lil General store for about a year prior to the robbery; that he knew defendant's first name was "Timmy" and so informed the police the night of the robbery; and that on the night in question defendant wore a hooded sweat jacket which left his face exposed, he was in the well-lighted store for approximately three minutes and he came within two feet of the witness. Under these circumstances, there was an adequate independent basis for the in-court identification by Bickham.
With respect to the corporeal lineup, defendant argues that the composition of the *811 lineup itself was conducive to mistaken identification in that Stephen Berry [3] was a participant in the lineup and defendant was not represented by counsel at that time.
The constitutional validity of an identification procedure depends on whether, judging from "the totality of circumstances surrounding it," it was "so unnecessarily suggestive and conducive to irreparable mistaken identification," that an accused was denied due process of law. Stovall v. Denno, supra.; State v. Newman, supra. The lineup complained of in this case was composed of thirteen subjects exhibited in two separate groups, one group of seven members and one of six. Defendant was placed in the second group of six, along with Stephen Berry. Bickham testified at the hearing on the motion to suppress the identification that he recoganized Berry in the lineup, and that he had seen pictures of both Berry and defendant in the newspaper. However, there is no indication that Berry's presence in the lineup influenced Bickham's identification. Furthermore, as previously noted, there was an independent basis for the witness' in-court identification so that even if the corporeal lineup was tainted, defendant was not prejudiced thereby. See State v. Cloud, 319 So.2d 793 (La.1975); State v. Bland, supra.; State v. Newman, supra.
Defendant also argues that he was entitled to have counsel present at the April 16, 1973 lineup, which took place ten days prior to the filing of a bill of information against defendant on April 26, 1973. Defense counsel contends that Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) did not limit the right to counsel to post-indictment matters, but rather set forth a test of "initiation of adversary judicial criminal proceedings" which can be met by factors other than merely the date of formal charges. It is argued that this test is satisfied in the instant case because defendant was arrested in connection with the robbery, released without being charged and then later rearrested and placed in the lineup.
The United States Supreme Court in Kirby v. Illinois, supra., held that an accused is entitled to the right to counsel when adversary criminal proceedings are initiated, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Arrest alone does not entitle an accused to have counsel present at his lineup.[4] As the Court in Kirby v. Illinois, supra., noted:
"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified."
Applying the holding in Kirby v. Illinois, supra., this Court has consistently held that the presence of an attorney is not required at lineups held prior to the filing of bills of information. State v. Stewart, 325 So. 2d 819 (La.1976); State v. Nero, 319 So. 2d 303 (1975); State v. Lawrence, 294 So. 2d 476 (La.1974).
In the instant case, defendant was not formally charged until ten days after the lineup. His arrest, release, and rearrest did not mark the initiation of adversary criminal proceedings against him. Therefore, defendant was not entitled to *812 have counsel present to represent him at the lineup. This does not mean, however, that an accused has no protection against an abuse of identification procedures during the course of a criminal investigation. As noted above, unnecessarily suggestive lineups are violative of due process of law. See Stovall v. Denno, supra. State v. Newman, supra. However, no such showing was made under the facts of this case.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4.
By this assignment of error, defendant argues that it was error for the trial court to refuse to allow defense counsel to challenge for cause juror number 246.
Prior to voir dire examination, defense counsel, in an effort to insure that defendant's trial on this matter would not be adversely affected by the extensive media coverage of the Jo Ellen Smith murder case, informed the prospective jurors that defendant had been arrested along with Stephen Berry for that offense, that Berry had been convicted, but that the charges against defendant had been dismissed. Defense counsel then inquired whether knowledge of these facts would affect their ability to give defendant a fair trial. Juror number 246 responded that he had a nineteen year old daughter who was a nursing student "and I don't know whether that would influence me or not, I would try not to, but." He then added "I don't know until I hear the evidence . . .right now I would say it wouldn't but that doubt is there." In response to further questioning by the assistant district attorney, the juror testified that he had no preconceived opinion relative to the instant armed robbery case and that he would try to wait until he had heard all the evidence before reaching a decision. While the juror did equivocate when questioned again by defense counsel, in response to the trial judge's question "if you were asked to pass your verdict right now, either guilt or innocence, do you have a decision at this point that you would make?", the juror stated, "No, I couldn't; I haven't heard anything yet." At the conclusion of this voir dire examination, defense counsel moved for a challenge for cause, which was denied by the trial court.[5]
Louisiana Code of Criminal Procedure article 797 provides that the defendant may challenge a juror for cause on the ground that:
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence."
The determination of the qualification of a juror is within the sound discretion of the trial judge. State v. Johnson, 324 So.2d 349 (La.1975); State v. Frazier, 283 So.2d 261 (La.1973). In reviewing the entire transcript of the voir dire examination of this juror, we do not find any abuse of discretion in the trial judge's refusal to grant the challenge for cause. While the juror did make some equivocal responses with respect to the effect knowledge of defendant's arrest in the Jo Ellen Smith case would have on his attitude toward defendant, those responses did not establish that the juror was unable to set aside those feelings and render a fair and impartial decision based on the evidence relative to the instant charge. See State v. Frazier, supra. Indeed the juror clearly indicated that he had no preconceived opinion as to defendant's guilt or innocence on this armed robbery *813 charge as shown by his statements that "I haven't heard anything yet", "[i]t depends on what the witnesses say," and "I don't know until I hear the evidence."
This assignment of errors lacks merit.

ASSIGNMENT OF ERROR NO. 5.
At the hearing on the pretrial motions, defendant testified that at the time of the robbery he was staying at 1800 Le-Bouef Court, across the street from the Lil General store where the robbery took place. On cross-examination at trial, however, defendant stated that at the time in question he lived at 3600 Cadillac Street. Over defense counsel's objection, the trial court admitted into evidence the appropriate page of the transcript of the pre-trial hearing as proof of defendant's prior inconsistent statement. It is this objection that is the basis of this assignment of error.
La.R.S. 15:493 provides as follows:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible." (Emphasis added).
When questioned about the earlier statement by the assistant district attorney, defendant several times flatly denied having made it. He then finally conceded: "No, I don't deny making the statement, I might have been confused...." Defense counsel argues that this final remark was a distinct admission by defendant that he had made a prior inconsistent statement and that, therefore, page ninety-seven of the transcript of the pre-trial hearings, which contained that statement, should not have been admitted into evidence.
We conclude, that in light of previous denials by defendant and his equivocal and reluctant admission, it was not error for the trial court to allow proof of the prior statement to be admitted into evidence.[6]
The assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 6.
This assignment relates to the trial judge's refusal to declare a mistrial when the jury reported that it was unable to reach a verdict.
The trial began at 11:55 a.m. and at 9:38 p.m. the jury began its deliberations. At 10:05 p.m. they returned to the court-room to request additional instructions, and resumed their deliberations at 10:15 p.m. At 11:27 p.m., the foreman reported that the jury was unable to reach a verdict, but added that one juror, who was joined by two others, had suggested that if the deliberations could be continued the next morning, perhaps this would break the deadlock. He related that others had said during jury deliberation that they would not change their minds. The court ordered the jury sequestered for the evening, and the following morning they reached a decision.
The trial judge in this instance behaved both sensibly and properly in refusing the motion for a mistrial. Neither the procedure followed nor the judge's instructions to the jury was coercive; he did not demand *814 that they reach a verdict, but only required that the matter be given further consideration. Nor did he state or imply that the court would not accept a mistrial. In this respect, this case is clearly distinguishable from State v. Rodman, 208 La. 523, 23 So.2d 204 (1945) relied upon by defendant. The court did make the inquiry suggested in State v. Nicholson, 315 So.2d 639 (La.1975), as to whether "other jurors felt the deadlock could be broken." This language does not require, as defendant suggests, that when several jurors indicate that the deadlock might be broken, the remaining jurors be polled to determine whether they agree. Furthermore, while State v. Mims, 263 La. 193, 267 So.2d 570 (1972) also relied upon by defendant, holds that the court did not err when it permitted the jury to decide whether further deliberations would be fruitful, it did not hold that the jury as a whole must make this decision.
This assignment of error lacks merit.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] Jo Ellen Smith was the daughter of a prominent public official who was raped and murdered while visiting a housing project in Orleans Parish as a student nurse. Stephen Berry and defendant were originally jointly charged in connection with that offense. The charges against defendant, however, were subsequently dropped. Stephen Berry was ultimately convicted on that charge and sentenced to life imprisonment. State v. Berry, 324 So.2d 822 (La.1975).
[2] For various factors to be considered when determining whether to change venue see State v. Berry, supra.; State v. Bell, supra.; Annotation 33 A.L.R.3d 17 (1970).
[3] See footnote 1.
[4] The Court in Kirby v. Illinois, supra., noted that the only deviations from the rule that right to counsel attaches at the initiation of adversary proceedings are Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), where the prime purpose was not "to vindicate the constitutional right to counsel as such, but. . .`to guarantee full effectuation of the privilege against self-incrimination . . . .` (citation omitted)."
[5] As defense counsel exhausted all his peremptory challenges, the issue of the propriety of the trial court's ruling on this challenge for cause is properly before this Court. State v. Oliphant, 220 La. 489, 56 So.2d 846 (1952).
[6] We are not called upon in this case to decide whether the state can properly rely on article 295 of the Louisiana Code of Criminal Procedure as an alternative basis for the admissibility of this statement. The issue was not raised by either state or defendant and is not necessary to a decision on this assignment of error.