340 So.2d 222 (1976)
STATE of Louisiana
v.
Robert SMITH.
No. 57837.
Supreme Court of Louisiana.
October 14, 1976.
Rehearing Denied November 18, 1976.
*223 Joe D. Guerriero, O. P. Barnes, III, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Joe Rolfe White, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
On March 26, 1975, the Morehouse Parish Grand Jury indicted defendant Robert Smith and Bobby Lee White for the first degree murder of Gerald Summerville. La.R.S. 14:30. The State elected to try the two men separately, and a severance was granted. On October 24, 1975, a unanimous jury found defendant guilty as charged and he was subsequently sentenced to death. On appeal, he urges six assignments of error, one of which has been abandoned.
ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial court erroneously denied his motion for a change of venue which alleged that "due to great and widespread publicity given through news media of all kinds to the arrest of defendant, to the indictment against him, and to the alleged evidence against him, there exists a prejudice in the public mind of such a nature that [a]fair and impartial trial cannot be obtained in this parish." After a lengthy hearing on May 19, 1975, the trial court found that publicity attending the murder had not provoked public prejudice against defendant, and denied the motion.
Gerald Summerville was fatally shot at approximately 11:00 p.m., March 17, 1975, by the would-be robbers of his grocery store in downtown Bastrop, Louisiana. Five days earlier the owner of a liquor store in Bastrop *224 was also shot and killed during the perpetration of a robbery. The coincidence of these two brutal crimes jarred the community and received extensive coverage in the press. However, by the time the hearing was held, two months after the murder, the publicity had subsided and public interest had substantially diminished. Another five months elapsed before the trial.
In a motion for change of venue the defendant has the burden of showing that he cannot obtain a fair trial in the parish where the prosecution is pending. More than mere knowledge by the public of the facts surrounding the offense must be shown; additionally, there must be proof of such prejudice in the public mind that a fair and impartial trial cannot be obtained in the parish. La.C.Cr.P. art. 622; State v. Rudolph, 332 So.2d 806 (La.1976); State v. Berry, 329 So.2d 728 (La.1976); State v. Stewart, 325 So.2d 819 (La.1976); State v. Bell, 315 So.2d 307 (La.1975).
The proof at the hearing focussed upon the notoriety of the two unrelated but temporally proximate murders and the alarm which they had engendered in the community. However, our review of the testimony revealed no evidence of public outcry against this particular defendant. In fact, several of defendant's witnesses expressly declared that they felt defendant could get a fair trial in Morehouse Parish and stated that they had not encountered preconceived notions as to defendant's guilt or innocence in the community. There is no convincing indication in the record that the news coverage of Summerville's murder created an atmosphere of prejudice against defendant or that the witnesses did not respond frankly when they stated that defendant could receive a fair trial.
We conclude that the hearing judge did not abuse his broad discretion in denying the motion for change of venue. See State v. Rudolph, supra; State v. Berry, supra.
ASSIGNMENT OF ERROR NO. 3
Defendant complains of the court's refusal to permit the impeachment of a state witness out of the presence of the jury.
The witness, Mack Arthur Smith, had testified on direct examination that defendant and Bobby Lee White borrowed a .380 caliber pistol from him at about 10:00 p.m. on the night of the murder. The next morning, he stated, White returned the pistol and told him that defendant had killed Summerville with it, and on the following day, March 19, defendant had also visited him and reported shooting Summerville.
On cross-examination, defense counsel attempted to discredit the statement relative to defendant's admission by establishing that the witness had not related it to the police in their interviews with him on March 19, 20 and 21. When confronted with the fact that he had not told police about the meeting with defendant the witness countered, "I told them in the statement that I gave." Defense counsel then presented the witness with a copy of his March 21 statement and asked whether he could find in it any reference to this fact. The witness responded that he could not read well, and counsel then asked:
"If I were to tell you that I have examined this statement and cannot find anywhere in here any reference that Robert Smith ever came to your house and made any statements to you after the Summerville killing, would you be in a position to deny that?"
The witness answered, "yes." At this time, counsel asked that the jury be removed so that he could read the statement to the witness, explaining that it contained inadmissible material which he did not wish to present to the jury. He planned to repeat his question when the jury was returned to the courtroom. The trial court refused the request, and we find no error in the refusal. The witness had already insisted that he told police of the encounter with defendant. Thus the predicate for impeachment of the witness had been fully laid. Counsel was in a position to impeach his testimony by either introducing the statement or by establishing that the statement did not contain a reference to an admission by the defendant *225 through the officers who took the statement. It would have been permissible for the trial judge to grant defense counsel's request, for the court may remove the jury from the courtroom at any time when considered in the best interest of justice. La.C.Cr.P. art. 794. However, we cannot say the court prejudiced the defendant's rights or abused its discretion by refusing to do so in this instance.
Furthermore, counsel had previously impeached Mack Authur Smith's credibility on this same point earlier in the trial. When he was asked by defense counsel why he did not report his meeting with defendant in the March 21 interview with the police, the witness replied, "I don't know. I'm telling you the truth now."
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 4
Defendant argues that the judge's instruction to the jury concerning the credibility of accomplice testimony were inadequate and claims that the court erred in rejecting his requested special instructions on this subject. More specifically, he contends that the court "did not effectively impress upon the jury the fact that an accomplice may be motivated to falsify his testimony, nor did the Trial Court Judge in any way emphasize how the jury should weigh the credibility of an accomplice from the general instructions which the Court gave the jury on the credibility of all witnesses."
A mere reading of the court's instructions refutes this contention:
"Now, we refer to such a person as an accomplice. Now, I will remind you that such a person has a very obvious self interest in the outcome of the case and that his testimony may therefore be colored by his desire for leniency. So, you must review and consider and weigh the testimony of such a person very carefully with caution, not only in the light of all the circumstances of the case and all the rules that you apply to the other witnesses but also bearing in mind his special interest and his motives as you find them to be."
Not only are these instructions adequate, but they also substantially track the language of defendant's requested charge, which made it unnecessary that this be incorporated into the general instructions. La.C.Cr.P. art. 807.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 5
After the jury had deliberated for several hours, the foreman sent word to the judge that further instructions as to the possible responsive verdicts were desired; defendant alleges that the jury additionally made a specific request for information as to the corresponding penalties. A conference was held in the judge's chambers and both counsel approved his decision to instruct the jury on responsive verdicts and their penalties. Defendant was consulted and informed the court, through counsel, that he had no objections to the court's proposed action. However, pursuant to the court's policy of recording a defendant's consent to any off-the-record agreement, the judge said in open court:
"The court has been informed that the attorneys agree and that Mr. Smith, the defendant, has agreed that in addition to defining the crimes for you the court can tell you at this time what the law sets out as the penalties for each of these crimes, is that correct Mr. Smith? Is that your understanding?"
Defendant answered affirmatively, and the instructions were given. Before the jury was retired, however, defense counsel objected to the court's questioning of defendant, contending that by seeking defendant's express approval of the proposed instructions the court forced him to adopt a position inconsistent with his assertion of innocence. Counsel maintains that since an innocent man would be satisfied only with a verdict of not guilty, the logical inference to be drawn from defendant's acquiescing in the court's instructions was that he was guilty and would be happy with anything less than the death penalty.
*226 Because the jury was aware its foreman had requested further instructions regarding the penalties, we find this argument unconvincing. Defendant was merely acceding to the jury's own request for further instructions, and we do not think it likely that the jury could have drawn a negative inference from defendant's cooperation in this matter.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 6
This assignment relates to the court's denial of defendant's motion for a new trial, which was based upon the alleged errors previously considered. For the reasons stated above, we find that the motion was properly denied.
This assignment is without merit.
Although we affirm the conviction, the death penalty imposed in this case must be annulled and set aside. Subsequent to this appeal, the United States Supreme Court invalidated the death penalty of Louisiana's first degree murder statute, La.R.S. 14:30, under which defendant was sentenced. Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). For the reasons stated in State v. Jenkins, 340 So.2d 157 (La.1976), we conclude that the appropriate sentence to be imposed upon conviction for first degree murder is the most severe valid penalty established by the legislature for criminal homicide at the time of the offense (March 26, 1975), La.R.S. 14:29, et seq. This penalty is imprisonment at hard labor for life without benefit of parole, probation or suspension of sentence for a period of twenty years. See La.R.S. 14:30.1 as added by Acts 1973, No. 111, § 1.
Accordingly, defendant's conviction is affirmed, but the death sentence is annulled and set aside, and the case is remanded to the district court with instructions to the trial judge to sentence defendant to imprisonment at hard labor for life without eligibility for parole, probation, or suspension of sentence for a period of twenty years.
SUMMERS, J., concurs in the conviction but dissents from the holding on penalty for my reasons assigned in State v. Lee, La., 340 So.2d 180.
MARCUS, J., concurs with penalty directed by majority for reasons assigned in his concurring opinion in State v. Jenkins, 340 So.2d 157 (La.1976).