343 So.2d 694 (1976)
STATE of Louisiana
v.
Larry CALLOWAY.
No. 58280.
Supreme Court of Louisiana.
December 13, 1976.
Rehearing Denied January 21, 1977.
*695 Clyde D. Merritt, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Geraldine S. Veazey, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The Orleans Parish Grand Jury indicted Larry Calloway for the first degree murder of William Mummaw in violation of LSA-R.S. 14:30. After trial, the jury returned a verdict of guilty as charged. The court sentenced defendant to death. Defendant now appeals his conviction and sentence, relying upon five assignments of error.

ASSIGNMENT OF ERROR NO. 4
In Assignment of Error No. 4 defendant alleges that the trial court committed prejudicial error when it allowed the State to excuse four prospective jurors for cause based on their opposition to capital punishment. See LSA-C.Cr.P. Art. 798(2).
Counsel relies upon Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), wherein the United States Supreme Court held:
"that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."
On July 2, 1976, the United States Supreme Court invalidated the mandatory death penalty of our first degree murder statute, LSA-R.S. 14:30, in Roberts v. State of Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). Complying with this decision, this Court has concluded:
"that the appropriate sentence to be imposed upon a valid conviction for first degree murder is the most severe penalty established by the legislature for criminal homicide at the time of the offense, La.R.S. 14:29 et seq., which we may presume to be constitutional in the wake of Roberts v. Louisiana, supra. This penalty is imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years. See La.R.S. 14:30.1, as amended by Acts 1973, No. 111, § 1." *696 State v. Jenkins, La., 340 So.2d 157, No. 56,944 (1976). See also State v. Sledge, La., 340 So.2d 205, No. 57,766 (1976); State v. Morris, La., 340 So.2d 195, No. 57,775 (1976); State v. Lee, La., 340 So.2d 180, No. 57,716 (1976).[1]
We have uniformly held that a defendant insulated from the death penalty has no valid Witherspoon complaint. State v. Rester, La., 309 So.2d 321 (1975); State v. Adams, La., 302 So.2d 599 (1974); State v. Brown, La., 302 So.2d 290 (1974); State v. Fallon, La., 290 So.2d 273 (1974).

ASSIGNMENT OF ERROR NO. 5
In Assignment of Error No. 5 defendant alleges that the trial court erred in denying his challenge for cause of juror Cyril J. Miller. Defendant objected to Miller because Miller's nephew was a police officer. Inasmuch as the defendant exhausted all peremptory challenges, his objection is properly before us. LSA-C.Cr.P. Art. 800.
Although the juror's nephew was a police officer, the juror stated that despite this fact, he would give the defendant a fair trial. (Tr. p. 100) Moreover, the judge conducted a thorough examination of this juror, wherein the juror reiterated that after examining the facts and evidence and being instructed on the law that if he felt the defendant was not guilty he would "come in with not guilty." (Tr. p. 105)
It is well settled that the relationships to persons who might be prejudiced does not, "ipso facto" disqualify a person from serving as a juror. The connection must "be such that one might reasonably conclude that it would influence the juror in arriving at the verdict." State v. McClure, 258 La. 999, 249 So.2d 109 (1971).
The trial judge is vested with wide discretion in appraising the impartiality of prospective jurors, and his ruling will not be disturbed on appeal absent a clear showing of abuse of that discretion. State v. Jones, La., 315 So.2d 650 (1975).
Upon reviewing the voir dire examination, we find no abuse of discretion on the part of the trial judge in denying defense's challenge. State v. Weathers, La., 320 So.2d 895 (1975); State v. Jones, supra; State v. Richmond, La., 284 So.2d 317 (1973); State v. Flucas, 262 La. 625, 264 So.2d 586 (1972); State v. Isaac, 261 La. 487, 260 So.2d 302 (1972).
Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 7
In Assignment of Error No. 7 defendant complains that the trial court erred in ordering him, over his objection, to display the back of his right hand, upon which a cross was tattooed, to the jury without the proper foundation having been laid. Defendant objected to Mrs. Mummaw's identifying him by means other than that stated in the State's opening statement. Defense counsel asserts that because he first learned of this manner of identification when Mrs. Mummaw testified at trial he was caught by surprise and, therefore, prejudiced.[2]
In brief, defendant correctly states that in its opening statement the State is required to explain the nature of the charge and to set forth, in general terms, the nature of the evidence by which the State intends to prove the charge. LSA-C.Cr.P. Art. 766. He argues that because the State did not mention in its opening statement that Mrs. Mummaw, an eyewitness victim of the armed robbery in which her husband was killed, would identify defendant by means of a tattooed cross on his right hand, that the tattooed-cross testimony was not fairly within the scope of the State's opening statement and thus was inadmissible. LSA-C.Cr.P. Art. 769.
*697 In its opening statement, the State declared that the victim's wife, an eyewitness, would positively identify the defendant as the assailant. The State is not required to describe the evidence in minute detail. State v. Sneed, La., 316 So.2d 372 (1975). We find that the evidence is admissible as the witness's identification of defendant was made known in the State's opening statement.
Regarding defendant's objection that a proper predicate was not laid, we note that Mrs. Mummaw testified that she was present when the robbery occurred. She testified that the tattoo was on the back of the upper part of defendant's right hand, the hand in which he held the gun pointed at her.
We find, therefore, that a proper predicate was laid for the introduction of this evidence.
Assignment of Error No. 7 is without merit.

ASSIGNMENT OF ERROR NO. 9
In this assignment of error, defendant contends that the trial court erred in denying his motion to have two witnesses, who had not been sequestered, testify in his behalf concerning his general appearance at the time of the crime. He argues that he was prejudiced because the sequestration rule should yield to his overriding constitutional right to call witnesses and confront his accusers. U.S.Const. Amend. VI; La.Const. Art. 1, § 16 (1974).
The trial court judge denied defendant's motion because the witnesses had not been sequestered with the other witnesses and had remained in the court and heard the testimony of the State's witnesses. The two witnesses' proposed testimony related to whether defendant had a mustache at the time the crime was committed.
In State v. Holmes, La., 305 So.2d 409 (1974), we stated:
"The purpose behind the order of sequestration is to encourage development of the true facts of the case by preventing witnesses from being influenced by the testimony of other witnesses and by allowing for effective cross-examination. State v. Raymond, 258 La. 1, 245 So.2d 335 (1971), appeal dismissed, cert. denied, 404 U.S. 805, 92 S.Ct. 101, 30 L.Ed.2d 38 (1971); State v. McAllister, 253 La. 382, 218 So.2d 305 (1969), vacated in part on other grounds, 408 U.S. 934, 92 S.Ct. 2854, 33 L.Ed.2d 748 (1971); State v. Lewis, 250 La. 876, 199 So.2d 907 (1967)."
Because defense counsel failed to apprise the court that he would call the two witnesses, they remained in the courtroom throughout the trial and heard the testimony, including that of the victim's wife, that defendant did not have a mustache.
Louisiana Code of Criminal Procedure Article 764 grants to the trial court the discretion to modify a sequestration order in the interest of justice. The trial court also is vested with discretion in disqualifying a witness for non-compliance with the order. State v. Holmes, supra; State v. Williams, La., 271 So.2d 857 (1973); State v. Edwards, 257 La. 707, 243 So.2d 806 (1971); State v. Rouse, 256 La. 275, 236 So.2d 211 (1970). The trial judge's ruling will not be reversed on appeal absent a clear showing of abuse of discretion.
As we have noted, the two witnesses were in the courtroom throughout the trial and heard the crucial testimony that the defense sought to contradict. To allow them to testify under these circumstances would violate the purpose of the sequestration order. Moreover, other witnesses were available to testify concerning defendant's appearance and mustache. Indeed, three of them were called and did testify that defendant had a mustache on the date that the crime was alleged to have been committed. Under all the circumstances, we find no abuse of discretion.
Assignment of Error No. 9 is without merit.

ASSIGNMENT OF ERROR NO. 10
Defendant reserved Assignment of Error No. 10 to the trial court's denial of his motion for a mistrial based on two jurors' *698 acquaintance with two witnesses who testified at trial.
Approximately three hours after the jury retired for its deliberation, jurors Lawless Honore and Saul Aaron returned to the courtroom and informed the court that they had been acquainted with certain witnesses who testified. The jurors were questioned concerning their acquaintance with the witnesses. The trial court judge informed defendant personally of the above, and after discussing the matter with defense counsel, the defense agreed that the jurors should continue with their deliberation. Later, defense counsel informed the court that the defendant had changed his mind and that defendant wanted to move for a mistrial. Defendant now complains of the denial of his motion for a mistrial.
In the light of defendant's failure to seek remedial action at the crucial time and his agreement to allow the jurors to continue in their deliberation, the motion for mistrial is foreclosed on appeal. LSA-C.Cr.P. Art. 841; State v. Marcell, La., 320 So.2d 195 (1975).
Moreover, a juror's acquaintanceship with a witness for either the State or the defense is not of itself a ground for a mistrial. Ordering a mistrial is a drastic remedy and is authorized only when there is a clearly specified ground. LSA-C.Cr.P. Art. 775; State v. Nicholas, La., 312 So.2d 856 (1975).
Assignment of Error No. 10 is without merit.

ASSIGNMENTS OF ERROR NOS. 1, 2, 3, 6, AND 8
In Assignments of Error Nos. 1, 2, 3, 6, and 8, defendant alleges, respectively, that: the trial court erred in refusing to grant the motion to suppress the identification of the defendant by Mrs. Mummaw at the hearing on that motion; the trial court erred in refusing to grant his motion to quash which alleged that the grand jury had no women or males below 21 to 18 on it; the trial court erred in denying his motion for continuance; the trial court erred in allowing the introduction of the coroner's proces verbal before defendant had an opportunity to cross-examine; and the trial court judge erred in admitting the lineup photograph into evidence.
These assignments of error were neither briefed nor argued. However, in light of the magnitude of the crime with which defendant is charged, we have reviewed them and, after examining the record, find them without merit.
For the reasons assigned, the conviction is affirmed. The death sentence is annulled and set aside, and the case is remanded to the district court with instructions to the trial judge to impose a sentence of life imprisonment without benefit of probation, parole, or suspension of sentence for a period of twenty years.
NOTES
[1] The author of this opinion dissented from the sentence reduction in these judgments. See his dissent in State v. Davenport, La., 340 So.2d 251, No. 57,963 (1976).
[2] At the hearing on defendant's motion to suppress the identification, Mrs. Mummaw did not testify concerning the tatooed cross. In its brief, the State asserts that Mrs. Mummaw did not mention the tatooed cross until the day following that hearing.