345 So.2d 485 (1977)
STATE of Louisiana
v.
Leroy MADISON (two cases).
Nos. 58863 and 58864.
Supreme Court of Louisiana.
April 11, 1977.
Rehearing Denied May 13, 1977.
*489 Eddie N. Pullaro, Houma, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., James L. Alcock, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant, Leroy Madison, was charged by bill of information with the attempted first degree murder of Philip Billiot, a Terrebonne Parish deputy sheriff, La.R.S. 14:30 and 14:27, and found guilty as charged by a unanimous twelve member jury. He was subsequently sentenced as a multiple offender to serve forty years at hard labor. On appeal, he urges twenty-one assignments of error for reversal of his conviction and sentence. We affirm.
ASSIGNMENT OF ERROR NO. 1
Defense counsel, appointed by the court to represent the indigent defendant, asserted in a pretrial motion that he was unable to prepare a proper defense without the assistance of a private investigator in locating a crucial witness, and requested the court to provide $500 for the services of a *490 qualified investigator. After a contradictory hearing, the judge denied the motion because he knew of no authority for the requested expenditure and felt the Indigent Defender System could not bear the expense of furnishing investigators upon request. This ruling is assigned as error.
The right to a private investigator may in many cases be an adjunct to the right to counsel: furnishing counsel to the indigent defendant is not enough if counsel cannot secure information on which to construct a defense. See, United States v. Johnson, 238 F.2d 565, 572 (2d Cir. 1956) (dissenting opinion of Frank, J.); Note, "The Indigent's Right to an Adequate Defense: Expert and Investigational Assistance in Criminal Proceedings," 55 Cornell L.Rev. 632 (1970); Note, "Right to Aid in Addition to Counsel for Indigent Criminal Defendants," 47 Minn.L.Rev. 1054 (1963); ABA Standards for Criminal Justice Relating to Providing Defense Services (1967), § 1.5 and commentary. It is a fundamental principle that the kind of trial a man gets cannot be made to depend on the amount of money he has. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Therefore when an indigent defendant shows that his attorney is unable to obtain existing evidence crucial to the defense, the means to obtain it should be provided for him, and if the indigent defender system cannot defray the expense, the State ought to supply the funds.
In the instant case, however, defendant did not make a sufficient showing of need to justify the procurement of an investigator. Defendant testified at the hearing that the investigator was needed to locate a man who had been at the scene of the crime shortly before its occurrence. He stated that he had met the individual for the first time that night and knew his first name, but had not learned his last name or where he resided. The only clues he could offer to the man's location were a general physical description of him and the name of a place to which he had asked defendant to take him. More importantly, because defense counsel was unwilling to disclose to the State any of the details of his defense, the court was given no indication of the man's possible contribution to the case beyond counsel's bald assertion that he was "vital to our defense."
While we appreciate counsel's reluctance to reveal his defense, we cannot overlook his failure to establish any genuine need for the location of the missing witness. The dilemma might have been avoided in a private hearing before the trial judge instead of a contradictory hearing with the State as requested by defense counsel. Having chosen to proceed in this fashion and withhold a full explanation of his request, he cannot complain of the court's refusal to order a search for a possibly useless and probably untraceable witness.
This assignment is without merit.
Assignment of error number 2 was not briefed or argued and is considered abandoned.
ASSIGNMENTS OF ERROR NOS. 3, 11, 12 & 13
By these assignments, the defense argues that the in-court identification of defendant by the victim of the crime, Deputy Billiot, resulted not from his independent recollection of his assailant but from his exposure to defendant at the preliminary hearing, where defendant was the only black man in the courtroom. Counsel further claims that the in-court identification by Deputies Billiot, Bergeron and Detiveaux were the product of an unduly suggestive procedure, in that defendant was conspicuously displayed at the defense table between his two white attorneys.
In State v. Boettcher, 338 So.2d 1356 (La.1976), we agreed that identification in court at trial or at a preliminary hearing, where the accused sits at the defense table and may be the only black in the courtroom, may be highly suggestive. However, when an in-court identification has a source independent of the tainted procedure, it does not violate the accused's due process rights, State v. Price, 325 So.2d 780 (La.1975); State v. Bland, 310 So.2d 622 *491 (La.1975); State v. Newman, 283 So.2d 756 (La.1973). In State v. Newman, supra, we enumerated three factors to be considered in determining whether the identification has an independent source: 1) the prior acquaintance of the witness with the accused; 2) the length of time the witness observed the perpetrator before, during and after commission of the offense; and 3) the circumstances under which the observation was made, including illumination at the scene, the physical capacities of the witness, and the witness' emotional state at the time of the observation.
At approximately 2:00 a. m. on the morning of February 8, 1975, Deputy Philip Billiot, while on routine patrol in Chauvin, Louisiana, noticed a Mercury automobile parked in front of a local store, and on closer inspection, saw that the glass door of the building was broken. He parked his vehicle behind the other car and got out to investigate. As he walked toward one end of the building, a black male jumped out from behind the Mercury and fired three shots, striking the officer twice. The scene was illuminated by lights within the store and two street lamps. Positioning themselves on opposite sides of the Mercury, the two men exchanged several rounds of gunfire, but when Deputy Billiot maneuvered himself into his patrol car to radio for assistance, his assailant got into the Mercury and sped away. There followed a high speed chase, during which the deputy never lost sight of the other car. After giving chase for fourteen miles, Billiot's attacker finally turned off the road into a pipeyard where he stopped and abandoned his car. Billiot apprehended him and held him at gunpoint for several minutes until other police units arrived.
Deputy Bergeron was the first back-up officer to arrive at the scene. He held a shotgun on the prisoner, who was spotlighted by the headlights of Billiot's vehicle, until Lieutenant Detiveaux arrived a minute later and handcuffed him.
At trial, Billiot, Bergeron and Detiveaux positively identified defendant as the man taken into custody. The above-related facts demonstrate that at the time of the incident all three officers had ample opportunity to observe and ample reason to remember defendant's features. Moreover, we are impressed by defendant's failure to allege that the purportedly suggestive in-court identification procedure led to a mistaken identification of him. Because Deputy Billiot had defendant in his sight from the time of the shooting until defendant was taken into police custody, where he remained until trial, we do not believe that the identity of Billiot's attacker was a serious issue in this case.
These assignments are without merit.
ASSIGNMENT OF ERROR NO. 4
This assignment relates to the trial court's denial of two motions for change of venue, filed on August 27 and December 30, 1975. Defendant alleged in each motion that public prejudice against him, arising out of articles published in a local newspaper, would make it impossible for him to receive a fair trial in Terrebonne Parish.
At the hearing on the first motion on September 5, 1975, defendant introduced four articles which had appeared in the Houma Daily Courier and related to an armed robbery allegedly perpetrated by defendant and James LaGarde in June of 1973. Three of the four articles were the basis of LaGarde's motion for a change of venue in a theft prosecution in 1974.[*] In reviewing the trial court's denial of the motion in that case, we found the court's ruling proper, since "the voir dire examination clearly showed that the jurors were free of any prejudice that would prevent defendant from receiving a fair and impartial trial." State v. LaGarde, 308 So.2d 748, 749 (La.1975).
Another hearing was held on January 13, 1976, pursuant to defendant's second motion *492 for a change of venue. Three more recent articles from the Houma Daily Courier were introduced. The first, published on February 9, 1975, the day after the crime, was an objective, non-inflammatory account of the incident; the second, dated November 14, 1975, was in praise of Deputy Billiot's heroic apprehension of defendant, whose name was not mentioned; and the last, a lengthy article appearing on January 7, 1976, reviewed "Parish Crime in 1975," devoted only two short paragraphs to the instant offense, and likewise did not mention defendant's name.
Additionally, defendant presented the results of an admittedly amateurish survey conducted in the parish, which indicated that ten of the twenty-four persons interviewed had heard of defendant's name. Defendant does not emphasize, but we note, that twenty-three of those questioned did not remember hearing the names of those involved in the instant offense, and twenty did not recall the 1973 armed robbery in which defendant had been implicated.
In a motion for a change of venue, the applicant has the burden of proving that a fair and impartial trial cannot be obtained in the parish where the prosecution is pending. La.C.Cr.P. art. 622; State v. Rudolph, 332 So.2d 806 (La.1976); State v. Berry, 329 So.2d 728 (La.1976); State v. Stewart, 325 So.2d 819 (La.1976); State v. Bell, 315 So.2d 307 (La.1975); State v. Richmond, 284 So.2d 317 (La.1973). Article 622 of the Code of Criminal Procedure requires more than proof of publicity or knowledge by the public of the facts surrounding the offense. It requires, in addition, proof of such prejudice in the public mind that a fair and impartial trial cannot be obtained in the parish. State v. Rudolph, supra, and cases cited therein.
We find that defendant failed to sustain his burden of proof in the instant case. The publicity he protests against was sparse and objective, and the last newspaper account indicating defendant's name was published almost a year prior to the trial. Further, only one prospective juror stated during the voir dire examination that he had formed a fixed opinion of the case based upon the news media reports (he was excused for cause), and there is nothing in the record to suggest that the other veniremen had been influenced by the publicity. See State v. Rudolph, supra.
The granting or denial of a motion for change of venue rests within the sound discretion of the trial judge, State v. Rudolph, supra, and cases cited therein, and under the evidence presented in support of defendant's motion, we find no abuse of that discretion in the court's refusal to grant a change of venue.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 5
Defendant contends that the court erroneously overruled his challenge for cause of a prospective juror, Ms. Melinda Naquin, whose brother-in-law had served for over a year as a Terrebonne Parish deputy sheriff. He had served on a full time basis, however, for only two months prior to the trial. The challenge for cause was based upon the alleged partiality of the juror, La.C.Cr.P. art. 797(2), who, it was claimed, would identify the victim of the offense, also a Terrebonne Parish deputy sheriff, with her brother-in-law. Inasmuch as defendant exhausted all of his peremptory challenges before the jury panel was completed, the objection is properly before us. La.C.Cr.P. art. 800; State v. Calloway, 343 So.2d 694 (La.1976).
We have previously indicated that the service on a criminal jury of one associated with law enforcement duties must be scrutinized closely and may ordinarily justify a defense challenge for cause. State v. Ballard, 337 So.2d 481 (La.1976). This is particularly so where the victim of the crime is a police officer. However, a relationship to one who might be prejudiced does not disqualify a person from serving on the jury unless that relationship would influence the juror in arriving at a verdict. State v. Calloway, supra. In Calloway we found that the trial court had properly refused to excuse for cause a venireman *493 whose nephew was a police officer, and in State v. Nix, 327 So.2d 301, 326 (La.1975), we upheld the denial of a defense challenge for cause of a prospective juror whose brother-in-law was a murder victim, where both veniremen stated they could give the accused a fair trial.
Ms. Naquin unequivocally denied that she would be influenced by the fact that her brother-in-law was a police officer and indicated that she could render a fair and impartial verdict based on the evidence in the case. The trial court has broad discretion in passing upon the qualifications of prospective jurors, State v. Calloway, supra, and we find no abuse of that discretion here.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 6
Defendant claims that the court erred in failing to excuse the entire second panel of veniremen after it had been exposed to the allegedly prejudicial remarks of two members of the panel.
The remarks complained of were the statements by one prospective juror that he would give more credence to the testimony of law enforcement officers and by another that he had formed a fixed opinion in the case, which was not disclosed; both prospective jurors were excused for cause. Defendant did not question the remaining veniremen as to whether they had been influenced by the statements, did not suggest to the court that the panel be excused, and accepted two of its members without challenge.
Because of defendant's failure to make known to the trial court the action he desired it to take, this assignment is not properly presented for our review. La.C. Cr.P. arts. 841 and 920.
ASSIGNMENT OF ERROR NO. 7
Defendant asserts that the trial judge erred in failing to excuse for cause three prospective jurors, one of whom knew the victim's wife's family, and two of whom were acquainted with a State witness. All three jurors indicated that their associations with the witnesses would not influence their ability to render a fair and impartial verdict, and because defendant did not challenge any of them for cause, this assignment is not reviewable by this Court. La.C.Cr.P. arts. 841, 920.
ASSIGNMENTS OF ERROR NOS. 8 & 9
In response to a question directed to the fourth panel of veniremen on voir dire examination, two prospective jurors stated that their respect for law enforcement officers would cause them to be biased against defendant, charged with attempted murder of a sheriff's deputy. Both jurors were excused for cause, but defendant further requested that the remainder of the panel be excused and that the court declare a mistrial.
Although the statements complained of were admissions of bias against defendant, they were not in and of themselves prejudicial. The question which prompted the statements was directed to the panel as a whole, and none of the other prospective jurors indicated that they shared the views of the two who were excused. We do not believe that the remaining jurors were so malleable as to be influenced by these non-inflammatory statements of opinion. The candid responses of two members of the panel might, to defendant's advantage, have encouraged others of the same mind to disclose their preconceived biases, but were not likely to have fomented the same impressions in them.
The trial judge declined to take any action on account of the two jurors' remarks beyond excusing those making them; he reasoned that any adverse effect upon the other prospective jurors need not be the subject of speculation, but could be discovered by further voir dire examination.
We find his decision to have been proper. There was no showing of partiality on the part of the other veniremen to justify their excusal for cause under La.C.Cr.P. art. 797.
When a remark made by a prospective juror is of such a nature that it might *494 create prejudice against the accused in the minds of the other jurors, the court is required, upon defendant's request, to admonish the jury to disregard the statement. The drastic remedy of mistrial is authorized only if the court is satisfied that an admonition is not sufficient to assure the defendant a fair trial. La.C.Cr.P. art. 771; See State v. Redfud, 325 So.2d 595 (La.1976); State v. Wilkerson, 326 So.2d 353 (La.1976). For the reasons stated above, we do not consider the remarks at issue to have been prejudicial; they did not warrant either an admonition or the granting of a mistrial.
These assignments of error are without merit.
ASSIGNMENT OF ERROR NO. 10
In recounting the events leading up to the shooting, Deputy Billiot, pursuant to the prosecutor's questioning, explained that as he was driving through Chauvin, Louisiana, broken glass in the door of a local store caught his attention and caused him to stop for further investigation. Defendant objected to this testimony and unsuccessfully moved for a mistrial on the ground that the reference to broken glass was inadmissible evidence of "another crime."
Louisiana Code of Criminal Procedure article 770 provides:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument, refers directly or indirectly to:
"* * *
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
"* * *"
The jurisprudence interpreting this article has held that an impermissible reference to another crime deliberately elicited of a witness by the prosecutor would be imputable to the State and would also mandate a mistrial. State v. Overton, 337 So.2d 1201 (La.1976); State v. Lepkowski, 316 So.2d 727 (La.1975).
However, it is not merely reference to "another crime" which invokes the protection of the article, as defendant seems to suggest; the reference must be to another crime "committed or alleged to have been committed by the defendant as to which evidence is not admissible."
The trial court properly observed that the reference to the store's broken entrance, although perhaps indicative of a burglary, did not suggest that defendant was the perpetrator of that crime. Moreover, had the State introduced evidence to show that Deputy Billiot had surprised defendant in the perpetration of a burglary, which it did not, such evidence would have been admissible as part of the res gestae. La.R.S. 15:447-448; State v. Morris, 340 So.2d 195 (La.1976), and cases cited therein.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 14
Defendant contends that the court erred in allowing the State to introduce five photographs of his automobile into evidence without requiring that a proper foundation be laid for their introduction.
Detective Daniel DeRoche testified that he had taken the pictures at the pipeyard where defendant abandoned his car within an hour of the arrest. Each photograph bore Detective DeRoche's signature on the reverse side and was marked for identification with the case number and the date of the incident. DeRoche stated that the photographs were faithful and accurate depictions of the scenes reproduced, but because he admitted that he would be unable to swear to their authenticity without the identifying stamp, defendant claims they were inadmissible.
The law does not require as a prerequisite to the admissibility of photographs that the photographer have an independent recollection of the scenes depicted in them. The pictures themselves serve as an aid to the memory and there is no reason why the photographer may not rely upon a *495 label as a further aid to their identification. Detective DeRoche's positive visual identification of the photographs as being those he had taken on the night of the crime, and had developed and printed himself established a sufficient foundation for their admission. See, State v. Demery, 324 So.2d 418 (La.1975); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971).
Defendant further argues that the photographs were not competent evidence since Detective DeRoche had received no specialized training in photography. The officer testified that he had received on the job training by other police officers, and the pictures themselves attest to his ability to have taken them.
This assignment is without merit.
ASSIGNMENTS OF ERROR NOS. 15 & 16
When the State offered into evidence the bloodstained shirt and teeshirt worn by Deputy Billiot on the night of the shooting, defendant objected on the ground that the evidence was inflammatory, and when the court admitted the items over his objection, defendant moved for a mistrial which was denied.
The test of admissibility is whether the probative value of the evidence is outweighed by its prejudicial effect. State v. Morris, 340 So.2d 195 (La.1976); State v. Groves, 311 So.2d 230 (La.1975). The clothing complained of had been torn by the bullet which wounded the deputy in the chest, and was stained with a small amount of dried blood. It was a silent chronicle of the attempt upon Deputy Billiot's life, which the State had the burden of proving, and was relevant to corroborate his testimony that he had been shot at and wounded by defendant. The small patches of dried blood on the garments were not of such a nature as to overwhelm reason and incite the jury to associate defendant with the crime without sufficient evidence. See 4 Wigmore, Evidence § 157 (Chadbourn rev. 1972). We find that the trial court properly admitted the items in evidence and denied the motion for a mistrial.
These assignments are without merit.
ASSIGNMENT OF ERROR NO. 17
By this assignment, defendant urges that there was not sufficient evidence to support the jury's verdict of guilty. This argument was never addressed to the trial court and hence is not reviewable on appeal. La.C.Cr.P. arts. 841 and 920.
Furthermore, because our review is limited to questions of law, La. Const.1974, Art. V, § 5(C), we may not consider the sufficiency of the evidence, but only whether there was some evidence of each essential element of the crime charged. State v. Woods, 327 So.2d 405 (La.1976). The evidence summarized in connection with our discussion of assignments of error numbers 3, 11, 12 and 13 clearly constitutes some evidence to support the verdict.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 18
Defendant argues that the trial court erred in qualifying Detective Daniel DeRoche as an expert in fingerprint identification.
Detective DeRoche graduated from Nicholls State University with a bachelor of science degree. He subsequently completed two forty-hour courses in fingerprint classification at LSU and two forty-hour fingerprint courses at Federal Bureau of Investigation training schools. Additionally, he took a six-month correspondence course from the Institute of Applied Sciences, which was primarily devoted to the study of fingerprints. He had worked with fingerprints as a crime lab technician in the Terrebonne Parish Sheriff's office for for years.
Determination of the competency of an expert witness is a question of fact and the trial court's ruling should not be disturbed in the absence of manifest error. La.R.S. 15:466; State v. Rogers, 324 So.2d 358 (La.1975). We find that the trial court did not abuse its discretion in ruling that *496 Detective DeRoche's past experience and training established his competency to testify on the subject of fingerprint identification. See State v. Overton, 337 So.2d 1201 (La.1976).
ASSIGNMENT OF ERROR NO. 19
To establish that defendant was a multiple offender, the State introduced a certified Xeroxed copy of defendant's fingerprint card, on file at the Louisiana State Penitentiary in connection with the records of a prior conviction. Defendant objected that a Xeroxed copy of the prints was inadequate and that only the original document would suffice.
La.R.S. 15:529.1(F) provides:
"The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the finger prints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence on the trial of any person for a second and subsequent offense of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate."
The statute provides for the introduction of fingerprints "as they appear" in the prison records. Detective DeRoche, who conducted the in-court analysis of the fingerprints, testified that a Xeroxed copy would reflect every imprint on the original card and that his analysis would not be impaired by the fact that he was working from a copy. The trial court properly overruled defendant's objection.
This assignment is without merit.
ASSIGNMENTS OF ERROR NOS. 20, 21 & 22
By these assignments, defendant challenges the constitutionality of Louisiana's Habitual Offender Law, La.R.S. 15:529.1.
Initially, he argues that the statute imposes cruel and unusual punishment, an argument we rejected in State v. Williams, 326 So.2d 815 (La.1976).
He further claims that the habitual offender law is unconstitutional because it is applied discriminately against minority groups. In State v. Overton, 337 So.2d 1201, 1207 (La.1976), we held:
"In the absence of a showing that a policy of selective enforcement is deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, there is no constitutional infringement."
No such showing has been made in this case.
These assignments are without merit.
Accordingly, defendant's conviction and sentence are affirmed.
MARCUS, J., concurs.
SANDERS, C. J., concurs in the decree.
SUMMERS, J., concurs in result only.
TATE, J., dissents and assigns reasons.
TATE, Justice, dissenting.
I respectfully dissent.
With respect to Assignment No. 5, in my opinion, the trial judge erroneously refused to excuse Melinda Naquin when challenged for cause by the defendant.
At the time of trial, the prospective juror's brother-in-law was sheriff's deputy, serving on the same police force as the victim. Defendant based his challenge for cause on the partiality of the juror, La.C. Cr.P. art. 797(2), based upon the implicit identification by the juror of the victim's interest with that of her brother-in-law.
In holding that the trial court did not abuse its discretion in overruling the challenge, the majority relies upon State v. *497 Calloway, 343 So.2d 694 (La.1976), and State v. Ballard, 337 So.2d 481 (La.1976). However, those cases are easily distinguishable.
In Calloway, we found that the trial court had properly refused to excuse a venireman whose nephew was a police officer. We stated that relationship to one who might be prejudiced does not disqualify a person from serving on a jury unless that relationship would influence the prospective juror in reaching a verdict.
In Ballard, we found no abuse of discretion where the trial court refused to excuse an auxiliary policeman for cause. We there stated that jury service of one associated with law enforcement duties must be scrutinized closely; but, after examining that prospective juror's tenuous connection with law enforcement duties, we found no reversible error.
However, the defendant in neither Calloway nor Ballard was on trial for a crime committed against a police officer. In the instant case, to the contrary, the accused was charged with the attempted murder of a police officer during the performance of his duties. Because of the nature of the crime charged, it is not reasonable to conclude that the prospective juror's impartiality would not be affected by her close family connection with one serving on the same police force as the victim.
For the reasons hereinabove expressed, I respectfully dissent from the majority's conclusion that refusing to excuse the prospective juror did not constitute reversible error.
NOTES
[*] The fourth article, presented in this case, but not in LaGarde's was similar in content to the other three.