354 So.2d 1339 (1978)
STATE of Louisiana
v.
Earl J. SCHMITT, Jr.
No. 60525.
Supreme Court of Louisiana.
January 30, 1978.
Rehearing Denied March 2, 1978.
*1340 Robert J. Zibilich, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The Grand Jury of Orleans Parish indicted Earl J. Schmitt, Jr., for the theft of two million four hundred thousand dollars worth of treasury bills, a violation of LSAR.S. 14:67. Schmitt, an attorney, elected to represent himself at trial. The jury found him guilty as charged. Defendant was sentenced to pay a fine of $3,000 or serve one year in the parish prison and to serve eight years in the parish prison. A portion of the jail sentence was suspended with the special condition that the defendant serve one year and that he be released if and when he made restitution to the lawful owner. The court further ordered that defendant be placed on active probation for five years upon his release from prison.
On appeal, defendant relies upon five assignments of error for reversal of his conviction and sentence.
The background facts indicate that a security guard assigned to patrol a New Orleans residential area found a sock containing twenty-four one-hundred-thousand-dollar treasury notes. He sought the services of the defendant attorney to ascertain the proper owner and to collect any reward for return of the notes. Defendant and his client were to share in the reward.
The client gave the defendant three of the treasury notes for which he received a receipt. The factual issue at the trial was whether or not the defendant returned these notes and whether or not the client later delivered the other twenty-one notes for which he had no receipt. The jury resolved the factual issue against the defendant.

ASSIGNMENT OF ERROR NO. 8
Defendant alleges that the trial court erred in refusing to allow him to reopen voir dire after a juror stated that he knew a witness in the case but that it would not affect his judgment in the case.
During the voir dire examination, the prospective jurors were questioned to determine whether or not they knew the prosecuting attorney or the defendant. They were not informed of the names of the various witnesses in the case. After the jurors were accepted and sworn, and after the reading of the indictment and opening statements by each side, the court ordered a sequestration of the witnesses. At this time, Attorney James Kambur, a witness in the case, approached the bench in order to confer with the trial judge. Following a short recess, the following exchange occurred:
"(After the recess, a juror raises his hand and is acknowledged by the Court.)
"BY THE JUROR:
Your Honor, I was unaware that Mr. Kambur was involved in the case. I know him, but it would not affect my judgment in this case.
"BY THE COURT:
Yes, sir. I appreciate your disclosure, but you're telling me, categorically, that would in no wise affect your judgment?
"BY THE JUROR:
*1341 That's correct, sir.
"BY THE COURT:
Alright.
"BY MR. SCHMITT:
Your Honor, I'd like to find out in what capacity he knows him.
"BY THE COURT:
Whatever the capacity, he said, categorically, that he could judge this case fairly, on the basis of the testimony, and not on any basis of what may have transpired between you and this attorney; is that correct, sir?
"BY THE JUROR:
It is, your Honor.
"BY THE COURT:
Alright.
"BY MR. SCHMITT:
Respectfully object, your Honor."
In his assignment of error, defendant alleges that the trial court in refusing "to allow the defendant to further examine the juror to ascertain in what capacity the juror knew the witness or anything else which would determine the juror's qualification to sit as a juror in this case."
We find no error in the trial court's ruling. The time for challenging for cause, as well as for preemptory challenges, had passed; there was no showing of any incompetency on the part of the juror in question which would have necessitated other action by the trial court; and there was no abuse of the trial court's discretion in determining the competency of jurors. LSA-C.Cr.P. arts. 795, 796; State v. Buggage, La., 351 So.2d 95 (1977); State v. Rounsavall, La., 337 So.2d 190 (1976); State v. Rudolph, La., 332 So.2d 806 (1976); State v. Wilkerson, La., 326 So.2d 353 (1976).
We are in complete agreement with the trial court's Per Curiam, which states:
"After the jurors had been sworn the juror had raised his hand and acknowledged that he knew Mr. Kambur and that he was unaware that Mr. Kambur was a witness. The juror stated flatly and without qualification `I know him, but it would not upset my judgment in this case.' The Court, just to make sure, stated, `I appreciate your disclosure, but you're telling me categorically that it would in no wise affect your judgment?' The juror answered flatly: `That's correct, sir.' The defense counsel wished to examine the juror further. The Court felt that under the voluntary disclosure, and the voluntary statement that it would in no way affect his judgment, further buttressed by the Court asking the juror the same question, and receiving the same answer, that any further exploration of it by defense counsel would have been useless. . . ."
Assignment of Error No. 8 is without merit.

ASSIGNMENT OF ERROR NO. 12
Here, defendant argues that the trial court erred "when it sustained the State's objection to expert testimony from Mr. James Estopinal, Esq., concerning the restrictions placed on attorneys in presenting a defense in a case where the attorney was accused of wrongdoing by the client and the client subsequently invoked an attorney-client privilege to protect communications with a different lawyer concerning the subject matter about which the present case turns."
The trial court correctly sustained the State's objection to expert testimony regarding the attorney-client privilege for two reasons: (1) the attorney-client privilege in Louisiana is governed by statutory law (LSA-R.S. 15:475) and is, therefore, a question of law for determination by the court; and (2) the attorney-client privilege was not relevant to the case because it had been specifically waived.
Louisiana Revised Statute 15:475 provides:
"No legal adviser is permitted, whether during or after the termination of his employment as such, unless with his client's express consent, to disclose any communication made to him as such legal adviser by or on behalf of his client, or any advice given by him to his client, or any information that he may have gotten by reason of his being such legal adviser."
*1342 The attorney-client privilege exists in favor of the client and may be waived by him. In the present case, a letter addressed to Mr. Kambur, the attorney who represented the victim of the theft after the termination of Mr. Schmitt's representation in the civil case, expressly waived the attorney-client privilege existing between the alleged victim and defendant. This letter was introduced into evidence as State's Exhibit S-10 (Tr. 26-27), and any claim by defendant that he was precluded from testifying by the attorney-client privilege is without substance.
The trial court correctly ruled that the existence of the privilege was a matter of law for determination by the court rather than a factual matter which might properly be the subject of expert testimony.
Assignment of Error No. 12 is without merit.

ASSIGNMENT OF ERROR NO. 13
Defendant alleges that the trial court erred when, "upon cross-examination of the defense character witness, Mr. James Estopinal, Esq., the Court overruled the defendant's objection to the question, `Would it influence your opinioncould it influence your opinion if you knew that he had taken two million, four hundred thousand dollars worth of treasury bills from his client and not returned them to him?'"
Louisiana Revised Statute 15:479 provides that "character, whether good or bad, depends upon the general reputation that a man has among his neighbors, not upon what particular persons think of him." Under the express wording of the statute, any attempt to elicit the personal opinion of a witness regarding defendant's character is impermissible. The contested question occurred during the following cross-examination of defendant's character witness:
"Q. Do you practice law with Mr. Schmitt?
"A. No, I do not.
"Q. Do you share in any cases with him?
"A. Not at the present time. I have, on occasion, referred clients to him, for some reason I felt that I had a conflict.
"Q. Did you ever share fees with him in a case?
"A. No. We never have.
"Q. Are you paid to appear here today as an expert witness?
"A. I hadn't thought about it. I hadn't intended to ask for pay.
"Q. And you say you do know other people in the community who knew Mr. Earl Schmitt, Jr.?
"A. Oh, absolutely.
"Q. Just on the West Bank, or the East Bank also?
"A. Well, mostly on the West Bank.
"Q. You live on the West Bank?
"A. Yes, I do.
"Q. I believe you said that you had an opinion as to his character for truth, honesty, and his integrity, and truthfulness; is that correct?
"A. Do I have an opinion?
"Q. Yes.
"A. Oh, certainly.
"Q. What was that opinion?
"A. That I find Mr. Schmitt to be quite an upstandingoutstanding young man.
"Q. Alright.
"A. Not just in the practice of law.
"Q. Would it influence your opinioncould it influence your opinion if you know that he taken two million, four hundred thousand dollars worth of treasury bills from his client and not returned them to him?
"BY MR. SCHMITT:
Objection, your Honor.
"BY THE COURT:
Well, he said `if,' so I think the question under cross-examination.
"EXAMINATION BY MR. WESSEL:
"Q. Would that influence your opinion?
"A. Well, it's a very difficult question to answer, because first of all my initial opinion would be that he didn't do it.

*1343 "Q. I'm asking you, sir, if you knew that Mr. Schmitt had taken two million, four hundred thousand dollars worth of treasury bills from his client and not returned them to him, would that influence your opinion as to his truthfulness, his honesty, and his integrity?
"A. Yes, if I knew that, it certainly would."
The question, though posed in a hypothetical form, was improper because it called for the personal opinion of the witness based on the crime with which defendant was charged. LSA-R.S. 15:479. However, in the present case, the error was harmless. LSA-C.Cr.P. art. 921. The defendant suffered no prejudiceactually, the defendant benefited from the prosecutor's questions: the witness was allowed to express his personal opinion of the defendant's good character and to testify that he would not believe the defendant had committed the crime with which he was charged.
Assignment of Error No. 13 is without merit.

ASSIGNMENT OF ERROR NO. 16
Defendant complains that the trial court erred in refusing to allow him to cross-examine the State's handwriting expert through the use of a photograph that the defense expert had made and used in his testimony.
The photograph was not admitted into evidence at the time defendant's expert testified, and defendant's attempt to use the photograph in his cross-examination of the State's expert did not occur until the following day. When defendant attempted to use the photograph (D-7) in his examination of the State's expert witness, the prosecutor objected on the basis that the photograph had not been admitted into evidence and that no foundation had been laid by defendant for its admission. The court instructed defendant that it was maintaining the State's objection until defendant laid a proper foundation for the photograph's admission into evidence:
"BY THE COURT:
You can admit the photograph into evidence in any way that I see acceptable. You can do that, but to date it's not yet been admitted into evidence.
"* * *
"BY MR. SCHMITT:
Your Honor, yesterday we had testimony from Mr. Courtney with reference to the different photographs.
"BY THE COURT:
You wish to respond?
"BY MR. WESSEL:
Yes, your Honor. I do not know what photographs were presented to Mr. Courtney yesterday. They were not marked. Whatever photographs Mr. Schmitt now has, he had in his possession since yesterday, and all night, and I don't know if they're the same ones that were presented to Mr. Courtney or not. And I haven't even been shown these things.
"BY THE COURT:
I maintain the objection. I think it's well-founded.
"[Defendant then began questioning the witness about other matters.]"
Initially, we note that the defense counsel acquiesced in the court's ruling, because, after a conference between the judge and opposing counsel, defendant continued his cross-examination of the witness along other lines after having been given the opportunity to lay a proper foundation for the admission of the photograph. LSA-C.Cr.P. art. 841.
Further, the trial judge's ruling was correct. The court properly refused to allow defendant to introduce the photograph without first laying a predicate for the admissibility of the exhibit. Although defendant did present certain photographs to his own witness to aid in his testimony, there was no showing that the present photograph had been admitted in evidence.
Assignment of Error No. 16 is without merit.

*1344 ASSIGNMENT OF ERROR NO. 17
This assignment of error relates to the denial of defendant's Motion for New Trial and raises two issues: (1) the court's refusal to allow defendant to question a juror, after the juror was sworn, regarding his relationship with a witness in the case; and (2) the effectiveness of defendant's representation of himself during the trial and its preliminaries because he had allegedly stopped using Tranxene, a tranquilizing drug.
The trial court's refusal to allow defendant further questioning of the juror was found to be without merit in Assignment of Error No. 8.
On July 22 and 27, 1976, a hearing was held on the Motion for New Trial in which the effects of ceasing to take Tranxene were fully explored. One witness offered by the defense at this hearing was Dr. Michael Francis Murphy, a physician and clinical pharmacologist, who testified that Tranxene is a minor tranquilizer prescribed as a treatment for anxiety, as a muscle relaxer, and for the control of seizure disorders. The witness stated that if an individual stops taking Tranxene he might suffer from a dream rebound symptom, possibly affecting his ability to formulate ideas or to otherwise perform intellectual functions, but not necessarily so.
The evidence is insufficient to establish that defendant was incapacitated during the trial. To the contrary, the record reflects that, on his own behalf, defendant conducted a vigorous defense. On this issue, the finding of the trial judge is entitled to great weight. The record contains no adequate basis for disturbing the following finding:
". . . The Court heard the evidence in this matter, as well as observed the defendant during the course of the trial, and the Court feels that there is no justification in law, or fact, for the granting of a mistrialat least a new trial, and I overrule this motion."
Assignment of Error No. 17 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.