LABORDE, Judge.
The defendant, Floyd Augustine, was charged by a grand jury indictment with the crime of second degree murder, a violation' of LSA-R.S. 14:30.1. On August 16, 1984, the defendant, accompanied by court-appointed counsel, waived formal arraignment and entered a plea of not guilty. On November 29-30, 1984, the defendant was tried before a jury of twelve and found guilty by a unanimous verdict. On December 20, 1984, the defendant was sentenced to the mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence.
FACTS
At about 8:55 a.m. on the morning of July 6, 1984, Dr. F.P. Bordelon, Jr., the Avoyelles Parish Coroner, responded to a call from the Marksville City Police stating that there was a young child dead in an apartment in the Marksville Housing Authority at 131 Eddie Street in Marksville, Avoyelles Parish, Louisiana. An autopsy was performed at Rapides General Hospital which revealed that the child died from a fractured liver. Dr. Bordelon testified that the child had received two hard blows to the abdominal area which could not have been caused by a man’s fists, but could have been caused by a pair of cowboy boots. Dr. Bordelon also testified that the child died within fifteen minutes of being struck.
Rosalie Henry, the victim’s mother, testified that on July 5, 1984, she and the defendant, her boyfriend, were living together at her apartment in the Marksville Housing Authority at 131 Eddie Street in Marksville, Louisiana. The victim, Jessica Henry (two years, eight months old) was also present. Rosalie Henry further testified that the defendant did not go to work that day but went to play ball and returned home about five o’clock with a bottle of whiskey. Miss Henry then took a bath and returned to her bedroom to read. Miss Henry then turned out the light and tried to go to sleep. The defendant then left Miss Henry’s bedroom but did not completely close the door. Miss Henry testified that she was able to see the defendant through the crack in the door. The defendant went into the bathroom for about three minutes. Miss Henry further testified that the defendant had a glass of whiskey which he took with him when he went into the victim’s room and partially closed the door. Miss Henry, the mother, then walked up behind this door and peeked through it and saw the defendant holding his hand over the victim’s mouth and noticed an empty glass on the floor. Miss Henry then asked the defendant what he was doing in the baby’s room, and the defendant replied that he was going to do the same thing to her as he had done to the victim. At this point, the defendant kicked the victim twice in the side. The defendant and Miss Henry then got into a fight. The fight did not last long. The two of them then went outside. When Miss Henry came back to check on the victim, she noticed that the victim had stopped crying and appeared to be asleep. The next morning, Miss Henry entered the victim’s room and thought the victim was still asleep. A few moments later, she went back to check on her again. Miss Henry then shook her to wake her up and noticed that she was cold and stiff. Miss Henry then told the defendant that the baby was dead.
ASSIGNMENT OF ERROR NO. 1
The defendant contends that the trial court erred in refusing to either disqualify a juror, Mrs. Azalea Goudeau, or permit further questioning of her to determine her bias and prejudice toward the defendant.
Specifically, defense counsel contends that during the voir dire examination of Mrs. Goudeau, he was not immediately conscious of the fact that Mrs. Goudeau had been a witness in a murder trial a few *1065 months earlier involving the same prosecutor and defense attorneys.
The record reflects that upon recalling that Mrs. Goudeau had served as a material witness in a murder trial a few months earlier involving the same attorneys, defense counsel made an objection and requested that he be allowed to question Mrs. Goudeau as to whether this previous involvement would tend to prejudice her.
Articles 795 and 796 of the Louisiana Code of Criminal Procedure state as follows:
“Art. 795. Time for challenges
A juror cannot be challenged for cause by the state or the defendant after having been accepted by the challenging party, unless the ground for the challenge was not known by the challenging party prior to acceptance. A challenge for cause must be made before the indictment is read to the jury.
A peremptory challenge may be made by the state at any time before the juror is accepted by it, and by the defendant at any time before the juror is sworn.
Art. 796. Removal of juror after swearing
If it is discovered after a juror has been accepted and sworn, that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course.”
In the present case, after a full voir dire examination in which counsel for both the state and defense participated, Mrs. Goudeau was properly sworn in as a juror. It is well settled that the determination of the qualifications of a juror is within the sound discretion of the trial judge. State v. Schmitt, 354 So.2d 1339 (La.1978); State v. Rudolph, 332 So.2d 806 (La.1976), cert. denied, 429 U.S. 982, 97 S.Ct. 496, 50 L.Ed.2d 591 (1976). In the present case, the voir dire examination reveals no showing of any partiality or incompetency on the part of Mrs. Goudeau. The fact that Mrs. Goudeau may have previously served as a state witness in a murder trial involving the same attorneys did not necessitate her removal. Furthermore, with the exercise of reasonable diligence, this fact could have been discovered by defense counsel before or during the voir dire examination. Despite this fact, Mrs. Goudeau indicated during voir dire that she could be a fair and impartial juror and render a verdict according to the law and evidence. Consequently, the trial judge did not abuse his discretion in denying defense counsel’s request to reopen the voir dire examination of Mrs. Gou-deau. La.C.Cr.P. art. 795; La.C.Cr.P. art. 796, State v. Schmitt, 354 So.2d at 1341.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
The defendant contends the trial court erred in that the evidence against the defendant was not sufficient to prove the defendant guilty of second degree murder.
The standard of review as to the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt proof of each element of the crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984).
In the present case, the defendant was convicted of the crime of second degree murder, a violation of LSA-R.S. 14:30.1, which states in pertinent part:
“Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he h^j no intent to kill or to inflict great bodily harm.”
At trial, Rosalie Henry (the victim’s mother) testified that on July 5, 1984, she and the defendant, her boyfriend, were liv *1066 ing together at her home in the Marksville Housing Authority at 131 Eddie Street in Marksville, Avoyelles Parish, Louisiana. The victim, Jessica Henry (two years, eight months old), was also present. Miss Henry, the victim's mother, continued to testify that the defendant did not go to work that day but instead went to play ball and returned at about five o’clock that afternoon with a bottle of whiskey. Miss Henry then put the victim to bed at about seven o’clock. During this time, the defendant was still sitting in the front room drinking whiskey. Miss Henry then took a bath and returned to her bedroom to read. She then turned out the light and tried to go to sleep. A short while later, the defendant peeked into her bedroom to see if she was asleep. The defendant then left Miss Henry’s bedroom but did not completely close the door. Miss Henry further testified that the defendant had a glass of whiskey which he took with him when he went into the victim’s room and partially closed the door. Miss Henry then walked up behind this door and peeked through it and saw the defendant holding his hand over the victim’s mouth. She also noticed an empty glass on the floor. Miss Henry then asked the defendant what he was doing in the baby’s room and the defendant replied that he was going to do the same thing to her as he had done to the victim. At this point, the defendant kicked the victim twice in the side. The defendant and Miss Henry then got into a fight. The fight did not last long. The two of them then went outside. When Miss Henry came back to check on the victim, she noticed that the victim had stopped crying and appeared to be asleep. The next morning, while Miss Henry was preparing to wash clothes, she went into the victim’s room to look for dirty clothes. Miss Henry initially thought the victimwas still asleep. A few moments later, she went back to check on her again. Miss Henry then shook her to wake her up and noticed that she was cold and stiff. Miss Henry then told the defendant that the baby was dead; the defendant replied that the baby was not dead. Miss Henry then went to the neighbor’s house and called an ambulance and the police. Miss Henry and the defendant then waited until the police and the coroner arrived.
The defendant’s main contention is that the record shows Miss Rosalie Henry to be an inveterate liar. However, it is the role of the fact finder to weigh the respective credibilities of the witnesses and it is not the function of the appellate court to second guess these credibility determinations. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983).
Dr. F.P. Bordelon, Jr., the Avoyelles Parish Coroner, testified that at about 8:55 a.m. on the morning of July 6, 1984, he received a call from the Marksville City Police that there was a young child dead in an apartment in the Marksville Housing Authority at 131 Eddie Street in Marks-ville. Dr. Bordelon then entered the child’s bedroom where he saw the child lying face down on the mattress which was lying on the floor. There was a circle of wetness about twelve inches in diameter underneath the child’s head and the child’s body was very stiff, indicating rigor mortis had set in. Dr. Bordelon also testified that the child had died approximately fifteen minutes after infliction of the blow which caused the death. Upon closer examination, Dr. Bordelon noticed a blue area on the child’s left side indicating that the child had received a blow to that area, and another similar area indicating the child had also been struck on the right. Dr. Borde-lon then decided to ask for an autopsy.
An autopsy was performed by Dr. Norman at Rapides General Hospital. The autopsy revealed that the child had died from a fractured liver. Dr. Bordelon further testified that these two blows could not have been caused by a man’s fists but could have been caused by a pair of boots. Dr. Bordelon also stated once more that the child could not have lived more than fifteen minutes from the time she received this blow to the liver.
In addition, Dr. Bordelon testified that blood tests indicated that the alcohol content of the victim’s blood was .26 per cent *1067 by weight. Finally, Dr. Bordelon testified that he believed the child received these fatal injuries as a result of being kicked, because the child was so short and because the foot was the most accessible thing to bring about this blow.
Officer James A. Bettevy, formerly of the Marksville Police Department, testified that on July 6, 1984, he was called to 131 Eddie Street and, upon arriving at the scene, viewed the victim in the bedroom on a mattress on the floor. Officer Bettevy noted that this area had an odor of alcoholic beverage.
In addition, Marksville Chief of Police Earl F. Greenhouse testified that he also investigated the scene of the incident and on July 17, 1984, he obtained a statement from Miss Henry in which she implicated the defendant. Specifically, Miss Henry stated that the defendant twice kicked the victim with his boot. After obtaining this statement, Chief Greenhouse directed several officers to arrest the defendant. The defendant was arrested at approximately 8:45 p.m. on July 17, 1984.
Shortly after his arrest, the defendant gave an initial statement in which he said that he had struck the victim with his fist because she had upset him by drinking out of his whiskey glass. The defendant also stated that Miss Henry had struck the child several times. Chief Greenhouse further testified that in order to sort out the differences between the two statements, Miss Henry was brought back into the room and the officers talked further with the defendant. During the course of this investigation, the defendant jumped up and stated he killed the victim and he was ready for his punishment. The defendant then voluntarily wrote a statement in which he specifically stated that he killed Jessica Henry, the victim, on July 5, 1984.
Viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the defendant, while wearing his cowboy boots, kicked the two year, eight month old victim twice in the abdominal region with the intent to kill or inflict great bodily harm and did in fact cause the death of Jessica Henry, who died within fifteen minutes of being struck. The evidence is therefore sufficient to sustain the defendant’s conviction for second degree murder.
This assignment of error is without merit.
For the above and foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs.